GeeeN, Judge,
delivered the opinion of the court:
The above-entitled cases are submitted pursuant to a stipulation filed January 20,1933., in, the case of Rose City Cotton Oil Mills v. United States, No. 17341 Cong. This stipulation applied to a large number of the so-called cotton linter cases, among which are the two cases now before the court. *513 By this stipulation the parties, among other things, agreed “that the general findings of fact and conclusions of law made by the court in the case of Farmers & Ginners Cotton Oil Company, No. 17357 (Cong.), are accepted by both parties hereto as applicable to and controlling in all other cotton linter cases pending in the Court of Claims.”
The parties further agreed that interrogatories would be prepared and submitted to the plaintiffs in the remaining cases “to elicit the necessary information for the determination of the courtj of the amount due in each case, namely, the tonnage of cottonseed crushed during the period from January 1, to July 31, 1919, * * This stipulation was approved by the court and is the last stipulation that was filed by the parties. Although this stipulation was intended to settle the remaining cotton linter cases with certain specified exceptions, the parties now dispute as to the meaning of it.
The contracts in all of these cases were not operative after November 28,1918, and were canceled on December 31, 1918. In the Farmers & Ginners Oil Co. case, 76 C. Cls. 294, 304, the court found the amount of cottonseed crushed by the plaintiff from January 1, 1919, to July 31, 1919, and allowed recovery thereon at the rate of $6.77 per ton, being the Food Administration price. The net amount of recovery was thereupon fixed by adding certain charges and making certain deductions by reason of matters which are not now in controversy. The findings in the Farmers de Ginners Oil Co. case also show that the War Industries Board required the mills to cut a minimum of 145 pounds of munition Enters from every ton of seed crushed, and in each case the contract fixed the price to be paid by the Government for Enters at $0.0467 per pound. Upon a production of 145 pounds per ton, this would amount to $6.77 for each ton crushed. It does not appear from the findings how many pounds of munition Enters were cut per ton of seed crushed during the period the contract was operative. Apparently under the stipulations that had theretofore been filed this matter was not considered material.
It is now contended on behalf of defendant that inasmuch as the additional facts stipulated show that during the time *514 the contract was in force the East St. Louis Cotton Oil Co. averaged only 124.03 pounds of munition linters from each ton of cottonseed crushed for which it received $5.79 per ton, and the Temple Ootton Oil Mill, during the same period, produced 211.60 pounds of munition linters from each ton of seed crushed for which it received $9.88 per ton, the court should assume that if these companies had continued to manufacture munition linters up’ to July 31, 1919, the amount produced per ton by each mill would have been the same during this period. In other words, instead of using $6.77 per ton as the yardstick to measure the amount of the plaintiff’s main recovery, it is said that in each case the basis should be the number of pounds of munition linters per ton produced during the period the contract was in force, and this multiplied by $0.0467, the contract price, should be the yardstick.
It is argued on behalf of defendant that if this is not done some of the mills will receive more and others less than they would have received under the terms of the contract had it been carried out. But this, we think, is mere speculation. None of the mills had been in operation but a short time when they were notified to change from the manufapture of' munition linters to mattress linters. It was to the interest of all of them to cut as great an amount of munition linters per ton as was possible. The agreed statement of facts shows that the Temple Cotton Oil Mill produced 211.60 pounds of munition linters per ton, or nearly 50 percent more than the required rate. The probabilities are that if the contract had continued in force for a longer period, those companies which were producing less than the required amount would have brought their production up even beyond 145 pounds either by adjusting their machinery or using new machinery, being stimulated to this action by the much greater profits which would have been obtained. It is true that the companies which averaged more than 145 pounds of munition linters per ton while the contract was in force will not receive as much as they would if the method of computing their recovery were that which is now contended for by defendant. But this is a *515 matter of which the plaintiff alone can complain, and the attorney for all of the plaintiffs is seeking to have the stipulation applied to both of the cases now before us. So far as the defendant is concerned, we think the total amount of recovery on the part of all of the plaintiffs will not be enlarged by so applying the stipulation.
We do not, however, rest our conclusion upon any inference as to the amount of munition linters which might have been produced. We are satisfied that the stipulation was intended to settle the cases to which it applied and that its effect was to ignore the amount of munition linters produced during the contract period and require in each case that the plaintiff should be allowed $6.77 for each ton of seed crushed from January 1 to July 31, 1919. If this is not done, the parties will enter upon a new field of controversy in each case, as to which new evidence will be needed on both sides. We do not think the amount of munition linters produced during the contract period is under the circumstances any evidence of what a mill would have produced later on, and if it be such it is only presumptive evidence which the plaintiff would be entitled to rebut. How and when the controversy would be ended, it is impossible to say. If the construction adopted by the court is followed no further audit of the books of the several companies is necessary, and the cases can rapidly proceed to judgment. Taking the cases as a whole, we do not think there would be any substantial loss or gain caused either to the Government or the plaintiffs if the stipulation is held to be controlling. It is to the advantage of all parties that the cáses be settled. To the plaintiffs because their recovery draws no interest and they have already been out of their money between sixteen and seventeen years. It is also to the advantage of the defendant to cease further expenditures upon cases where nothing can be gained.
It may be objected that this method of computing the recovery not only ignores the amount of munition linters produced per ton by the plaintiff while the contract was in force but also fails to take into consideration the period from November 28,1918, to January 1,1919, when the plain *516 tiff presumably had ceased the production of munition ¡inters and was producing mattress ¡inters, but the stipulation of facts in each case shows that plaintiff was paid $6.77 per ton for each ton of seed crushed during that period and it therefore is not necessary to take it into account. Moreover, in each case the parties agreed upon a statement of account under “the application of the stipulation aforesaid filed in Cong. No. 17,341.” In this account the defendant is charged with the number of tons of seed crushed from January 1, 1919, to July 31, 1919, at $6.77 per ton, also with certain other items not now in dispute, and defendant is credited with certain items as to which there is no disagreement. Subtracting the credits from the debits the net balance shows the amount due plaintiff in the East St. Louis Cotton Oil Co. case to be $63,603.90 and in the Temple Cotton Oil Mill case to be $3,275.91. In other words, these are the amounts due the respective plaintiffs in accordance with the stipulation filed in Cong. No. 17,341.
There are two other computations set out in the agreement of facts made in each case. Both are made on the basis of the average amount of munition ¡inters produced per ton during the period the contract was operative. For the reasons stated above, we think that neither presents the correct method of computing the amount of recovery to be awarded the respective plaintiffs and judgment will be rendered in each case in accordance with the computation to which reference is first made and for the respective amounts stated above.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and Booth, OMef Justice, concur.