GreeN, Judge,
delivered the opinion of the court:
The Farmers & Ginners Cotton Oil Company is one of 285 claimants whose claims are based on similar facts and which have been referred to this court by a Senate resolution. The facts established in the case show that the subject matter of the resolution is such that under existing law the court has jurisdiction to render a judgment in the case. There is no controversy between the parties on this point, and the claim of plaintiff has been submitted as if an ordinary action had been begun of which the court had jurisdiction, except that no pleadings have been filed on behalf of the Government. Accordingly, the case will be so treated, the claimant will be referred to in the opinion as the plaintiff and the Government as the defendant, and we shall discuss in the opinion only such facts as will be necessary for the decision of the case.
Treating the case as an ordinary suit, we find it is one which is brought to recover damages alleged to have been sustained by reason of a breach of contract between plaintiff and defendant, under which contract the defendant agreed to purchase cotton linters of the plaintiff at a stated price. On behalf of the defendant it is contended that all of the claims arising out of or under the contract upon which suit is brought were settled by a subsequent contract and agreement between plaintiff and defendant with which the defendant has fully complied. The plaintiff on its part insists that the contract of settlement is void, having been obtained through duress. To this the defendant answers in effect that the second contract was at most only voidable, and that the plaintiff after its execution accepted benefits under it and ratified it. Defendant also urges that in any event plaintiff sustained no damages as a result of entering into the second contract.
*309 While some other matters are argued in the case, we think it turns upon the two defenses stated above which are set up by defendant against plaintiff’s claim of duress, and that these two matters constitute the real issues in the case.
The case at bar is, in all its material features, the same as the case of Hazelhurst Oil Mill & Fertilizer Co. v. United States, 70 C.Cls. 334, in which this court entered a.judgment against the defendant, sustaining the plaintiff’s contentions that the second contract was obtained by duress and holding that the defendant was liable upon the original agreement. Counsel for defendant, however, insist that their present contentions were not urged in the Hazelhurst ease, supra, and that the defendant is not concluded by the opinion rendered therein. While there is still some contention made on behalf of the defendant that duress was not shown, the principal argument is that the plaintiff ratified and confirmed the contract which it alleges was obtained by duress and that in any event it sustained no damage by reason thereof. Counsel for defendant call attention to the fact that no ruling was made upon these matters in the Hazel-hurst ease, and urge that the opinion rendered therein is not decisive in the instant case.
It is not necessary to again review the facts and circumstances of the Hazelhurst case which, as we have said, were substantially the same as those in the case at bar. The main difference is as to the amount of damage sustained by the plaintiff, if any. Those who wish to ascertain these facts will find them fully set out in the opinion in the Hazelhurst ease. Condensing the statement made in the opinion in the Hazelhurst ease, we might say that the evidence shows that the second contract was brought about by a threat not simply to cancel the original contract, so far as future operations were concerned, “ but to refuse to pay for the linters which had already been tagged and accepted — a course of action for which the Government cannot present even the shadow of a legal right.” Such action would have been especially damaging because these linters had been specially cut, were unsuitable for commercial purposes, and unsalable except to the Government. The findings in the Hazelhurst case and this case show that if the plaintiff and the other mills had *310 refused to accede to the unlawful demands of the defendant’s agents and the latter had carried out their threats, the result would have certainly been irreparable damage and probably bankruptcy, 'for which the plaintiff had no remedy. The decision in the HazelTmrst case was carefully examined by the Solicitor General and a memorandum written in which it was said:
“ It may be added that the action of officers, characterized by the Supreme Court as discreditable to themselves and injurious to their Government, is now shown by conclusive findings to have been coercive and oppressive in its effect upon the plaintiff and others similarly situated. Such action should not be defended in the name of the United States before the Supreme Court, if there be legal justification (as I believe there is) for the decision rendered in the Court of Claims * *
The little that is said in argument to support the claim that there was in fact no duress finds no foundation in the facts in the case. There was a short delay in signing the second contract on account of the time it took to prepare it and the large number of parties who were to sign. But the defendant’s officials had already announced what would happen to those who did not sign and plaintiff’s president testified that he signed on account of the pressure so used. The only matter worthy of consideration is the contention made on behalf of defendant that the second contract was not void but only voidable and that plaintiff ratified it, or at least failed to repudiate it within proper time.
A long argument is made on behalf of defendant to support the contention that the contract was voidable and not void. The distinction is not important here. Any contract made under duress, not forbidden by law or contrary to public policy, may be ratified and carried out by the party coerced. If, however, it is duly repudiated by the party who is unlawfully coerced it becomes void. The contention made on behalf of the plaintiff that the second contract is unenforceable and- void is not at all inconsistent with the theory of the defendant that in the first instance it was merely voidable. It is not necessary to further consider these technicalities. What we have to determine is whether the plaintiff had a right to repudiate the contract.
*311 It is insisted on behalf of the defendant that if plaintiff did rescind the contract it did not do so in time, and that instead of rescinding or repudiating the second contract it ratified and affirmed it by accepting benefits under it. In support of this proposition, counsel for defendant cite and discuss at great length so great a number of authorities that it is impossible within the reasonable limits of an opinion to review even a small proportion of them. We can only say that in our judgment none of them have any application to the case at bar. That plaintiff did not repudiate the second contract until several months had elapsed after its being signed may be conceded. In the meantime it did accept payments from the defendant and these matters are relied upon by defendant to show that plaintiff did not repudiate the contract in time and that it ratified it by accepting money which the defendant paid in accordance therewith. The contention made on behalf of defendant in effect is that where a party is coerced into giving up a valuable contract and accepting and signing another one not so valuable, if the party so coerced does not immediately after signing it repudiate the contract and refuse to accept anything whatever from the party exercising the coercion, it has failed to announce its rescission in time and has ratified the new contract so made. Under such a rule, unless the party coerced so acts as to make the damages resulting from the coercion far greater and much more injurious than is required by the unlawful contract, he may not recover. In this case, had the plaintiff so acted, it would have been compelled to immediately give up its business and go into bankruptcy, and the result would have been that the damages would have been many times the amount now claimed.
We do not think any court has ever applied such a rule. It is quite true that where no previous contract exists and the complaining party is coerced into making a contract which he claims to be injurious to him, he may not, after the coercion has ceased or is removed, proceed to comply with the contract or accept benefits from the other party to which he would not be entitled except for the contract, especially when the other party has no notice of the intention of the *312 complainant to repudiate the contract; and that, in our opinion, is all that the cases cited on behalf of defendant hold. So also if he fails to make known his repudiation of the contract in time to prevent the other party from being prejudiced thereby, he is also estopped by his failure to announce his rescission in time. But that is not the situation in the case at bar. Here the plaintiff already had a contract which entitled it to certain payments. The defendant forced upon it a contract requiring it to receive lesser sums. What the plaintiff claimed was only what was required by the original contract and no more. What it received was less than that to which it was entitled under the original contract and very much less. The defendant was in no way prejudiced by the failure of the plaintiff to declare for rescission earlier than it did. It is urged that defendant would not have paid the plaintiff as much as it did if plaintiff had earlier announced that it did not propose to be bound by the terms of the second contract, but the evidence fails to sustain this contention except that it may be said that if at the time of signing the second contract or shortly after, plainiff had announced that it would not be bound by it, defendant probably would not have made payment for the linters already cut. But this does not support the claim that the receipt of the payment for the linters cut before January 1, 1919, operated as a ratification of the contract. This payment was due plaintiff on the first contract, but defendant refused to make it unless the new contract was signed, and if defendant did not make it the plaintiff had on hand a large quantity of linters which the findings show to have been unsalable except to the Government. It will be conceded that after July 31, 1919, when plaintiff had completed the contract and received payment for the linters cut prior to January 1,1919, the force of the conditions that had been imposed upon plaintiff had largely disappeared. But thereafter when the defendant made payments to plaintiff it must have well known that plaintiff was repudiating the contract of settlement for it had, on May 31, 1919, tried to get the board of contract adjustment to set it aside, and on June 29,1919, filed its claim as now made, which in effect *313 repudiated the settlement. The actions of defendant were such that plaintiff had to take part of what was due or nothing ; and, as we shall see later on, the plaintiff was not obliged to accept the worse of the two alternatives but could take what defendant was willing to pay and sue for the balance which was due.
An example of the manner in which the cases cited on behalf of the defendant are, as we think, misconstrued is found in the case of Barnette v. Wells Fargo Nat. Bank, 270 U.S. 438, 444. The opinion in this case is cited to show that when the complaining party seeks to disaffirm a contract made under duress such disaffirmance must be “ promptly ” made. It seems not to have been noticed that the case was one in which the complainant sought “to recall the legal consequences of an act which has operated to alter legal rights ~by transferring them to others.” [Italics ours.] As a matter of course the plaintiff therein could not stand by and permit the defendant to exercise these rights with third parties and then at its convenience some years later undertake to rescind the contract. As a warning that the decision should not be misapprehended, the court, on page 446, calls attention to the fact that it was not passing on a case “ where complainant’s silence did not mislead or prejudice the defendants, as in Northern Pacific Railway Co. v. Boyd, 228 U.S. 482.” In the last-named case there was a delay of many years, but the court said (p. 509):
“ * * * unless the nonaction of the complainant operated to damage the defendant or to induce it to change its position, there is no necessary estoppel arising from the mere lapse of time.”
At the time that the plaintiff and the other cottonseed crushers agreed to sign the new contract, they protested against the action of the Government in compelling them to do so. No further protest was made at the time the second contract was signed but as we have already seen the duress still continued, the conditions were practically the same, and there was no occasion for any further protest. On June 29,1919, the plaintiff filed a claim with the War Department which was based upon the original contract made and in *314 effect repudiated the second contract and gave notice that it declined to be bound by it. It is urged on behalf of defendant that after July 31, 1919, conditions were such that the duress no longer continued, but this is immaterial when defendant had already been notified that plaintiff refused to be bound by the second contract. Nor was plaintiff obliged to return the money which it received for linters cut prior to December 31, 1918, which was all that had been paid to it up to the time it filed its claim. Where a party has been coerced into making a contract which provides for payment of a less sum than was due it either by reason of a former contract or another cause, it is not required to return anything paid to it unless it has received more than it would have received under the original contract. A claim is made on behalf of the defendant that plaintiff had received more than it would have received under the original contract. On the other hand, counsel for plaintiff claim that the amount which it had received for linters cut up to December 31, 1918, was the same as it would have received under the original contract. The method of computing the amount due under the two contracts is so different that to say the least it can not be said that the evidence shows that plaintiff received any more, and we have accordingly found that the evidence fails to show that plaintiff received any more under the provisions of the second contract than it would have received under the first contract for’ the linters so cut. There was therefore nothing in this connection which prevented plaintiff from rescinding the second contract. But defendant claims that after July 31, 1919, the plaintiff presented an affidavit showing the quantity of linters produced by it during the period from January 1 to July 31, 1919, signed invoices prepared by defendant’s agent in accordance with the second contract covering the quantity of linters which defendant directed it to store for its account, and accepted payment from the defendant’s agent for the linters thus taken. None of these matters in our opinion prejudiced the defendant in the least. Defendant had already been notified that plaintiff would not be bound by the second contract and .all of these matters were necessary under the original con *315 tract. The Government had a right to require an invoice or bill of the amount of linters before it paid for them, and the fact that plaintiff furnished an affidavit as to the quantity produced and received an amount less than was due in no way prejudiced the defendant. It is said that if it had refused to make the affidavit the Government would not have paid for the linters. This may be true, but it does not show that the Government was prejudiced by the payment of a sum which was due and owing under any theory of the case, or by what plaintiff stated in the affidavit. It is probable, however, the Government officials were merely following their usual practice in this respect.
The contention of defendant in this connection is in effect that regardless of the fact that plaintiff received from defendant much less than it was entitled to under the original contract, nevertheless the acceptance of the money so paid amounted to a ratification of the second contract. It is quite true that where the parties have no previous contract under which money is due and a claim is made or suit brought to recover damages and thereafter a settlement of the case is effected under which money is paid, the money so paid must be returned if the claimant desires to repudiate or rescind the settlement. Such is the case of Louisville & Nashville R.R. Co. v. McEllroy, 100 Ky. 154, cited on behalf of defendant, and other cases along the same line where damage suits were involved. The rule applied in cases of this kind has no application to the one at bar, where an original indebtedness existed and' the plaintiff was coerced into •making a new contract providing for less than was due under the original one. Here again we must call attention ■to the fact that the language used by the courts in their -opinions on these cases shows that it is intended to apply only to cases similar in their nature and not to one altogether different, like the one at bar. As we have stated above, the amount which was received by the plaintiff was less than that which was due it under the original contract. It was therefore not estopped from rescinding the second contract by accepting payments, nor was it required to return money which was actually due it in order to bring *316 its suit upon the original contract. If the rule was as contended on behalf of defendant, the plaintiff could not receive the property or money which was due under a previous contract without ratifying the agreement which was entered into through duress. This court has often held that where a plaintiff has been compelled by Government officials to sign an absolute release for moneys due him by the Government in order to obtain payment of a less sum than was due him, his signing of such a contract and receipt of the money does not bar him from recovering the balance due. In the case of Union Pacific R.R. Co. v. Pub. Service Commission, 248 U.S. 67, a certain certificate was a commercial necessity to the plaintiff in order to issue bonds. The public service commission unlawfully required a large fee in the case, which the plaintiff paid in order to get the certificate.. The court said, with reference to its being in the interest of the company to get the certificate:
“ It always is for the interest of a party under duress to choose the lesser of two evils. But that fact that a choice' was made according to interest does not exclude duress,”
and consequently would not prevent recovery.
When plaintiff attempted before the Board of Contract Adjustment to have the second contract set aside, it clearly was repudiating it. When, on June 29, 1919, it further presented a claim in accordance with the original contract it gave notice to defendant that it claimed its rights were-fixed thereby. When defendant rejected this claim, it in effect informed plaintiff that any further payments which it made would be only in accordance with the second contract.
The case of Bowe v. Gage, 127 Wisc. 245, is the only case' cited by either party where the circumstances are parallel in the fact that there had been a previous contract under which the plaintiff was entitled to a certain amount and a settlement contract obtained by fraud and misrepresentation under which money had been paid which was not returned by plaintiff. The court said in substance that the amount so paid being less than that to which the plaintiff was entitled, plaintiff could retain the money subject only *317 to an equity in favor of the defendant that it should be-applied in payment of the amount due the plaintiff and that such an application was in effect a return of the money to the defendant, having been applied to its benefit upon a debt which it was found to be owing, and the court further-said that—
“ * * * the whole doctrine of refund upon repudiation of a contract of settlement is not technical, but equitable, and requires merely that the practical rights of the other party shall not thereby be prejudiced; that he shall be no worse off than if he had never made the contract of settlement.”
When the plaintiff filed its claim with the War Department it gave credit to the defendant for all that had been paid to plaintiff by the Government. The payments which the Government made after plaintiff filed its claim, for linters manufactured after January 1, 1919, weré made with full knowledge that the plaintiff repudiated the contract for settlement and that if plaintiff had a right so to do. the moneys so paid were due plaintiff- upon the original contract and could be rightfully applied thereon. There is nothing in this transaction to estop plaintiff from maintaining its action.
The case of Swift Co. v. United States, 111 U.S. 22, 28-29, was cited at length in the opinion in the Hazelhurst case, supra, but is so directly in point that it may be well to call attention to it again. In that case the plaintiff was entitled to a commission from the Government but the-Government refused to make payment of the amount due except in a manner that reduced the amount to which the-plaintiff was entitled, and the fact that the plaintiff accepted and held the amount which it received from the Government under the arrangements into which it had been coerced was held by the Supreme Court not to prevent its recovery of the amount due under the original contract. As was. said in the Hazelhwrst decision, the plaintiff has here presented a stronger case than was found in the quotation from the opinion of the Supreme Court in the Swift case, supra,. in that the threatened action of the defendant’s officials *318 was not only illegal but would have resulted in irreparable injury. In all cases where recovery is sought on account of injury or damage received through an unlawful act, the party complaining is required to so act that it will not intensify the damage caused by the unlawful act. Here the chief defense of the defendant is that plaintiff ought to have increased the damage done by refusing to accept money that was still due it under the original contract, after it had heen compelled to make another contract by duress.
It is contended on behalf of defendant that the original contract was canceled in accordance with its terms, but this is far from being the fact. The plaintiff, it is true, did receive notice of cancellation, but what was finally required of it made no pretense of conforming to the terms set out in the original contract upon which cancellation might be made. It was not in fact a cancellation of the original contract which would have simply stopped proceedings under it at the date of notification and entitled plaintiff to just compensation; but an entire nullification of the original contract accompanied with threats not to pay what was already due thereunder. In fact the contract obtained by duress recited that it was made “ in lieu of cancellation.”
It is claimed on behalf of the defendant that the regulations of the Food Administration limited the profit per ton of seed crushed to $8.00 a ton, and that plaintiff’s profits exceeded $3.00 a ton and the amount of its damage should be lessened accordingly. Counsel for plaintiff contended that the regulations were not absolute in this respect. We do not find it necessary to determine this question. Assuming the regulations to be as claimed by defendant, we find that the evidence fails to show that plaintiff realized a profit in excess of $3.00 a ton. It is true that defendant’s expert, McCallum, testified that plaintiff’s books so show, but his testimony is negatived by that of the witness Kidd also called on behalf of defendant but cross-examined at length by plaintiff. The cross-examination of the witness Kidd tended to show that McCallum failed to include considerable sums that in determining a profit would be allowed *319 for depreciation, and otherwise tended to show that the witness McCallum had not correctly computed the amount of the profit. Counsel for defendant contend that the matter relied upon by plaintiff was not proper cross-examination .and should be excluded from consideration, apparently on the ground that the witness did not testify in chief directly upon these matters. But the cross-examination tended to rebut inferences that might be drawn from his examination in chief with reference to the amount of profits realized by plaintiff, and we are inclined to think the better rule is that such matters are a proper subject for cross-examination. In any event, the admission of such evidence is clearly within the discretion of the court and we think it ought to be received.
It is finally contended on behalf of defendant that notwithstanding the plaintiff was required to give up its original contract and make a new one under which it would receive a less amount, plaintiff has concluded its operations with a profit and has been able to pay dividends. We do not think it necessary to discuss this matter at length, because we consider it entirely immaterial. If we are correct in what has been stated above, plaintiff was entitled to all of the benefits of the original contract and the fact, if it be a fact, that defendant’s unlawful conduct did not prevent it from making some profit can not prevent plaintiff from recovering the amount of which it was unlawfully deprived. The plaintiff is entitled to judgment but another question arises not mentioned in the argument of either party.
If the amount due the plaintiff under the first contract is ascertained in accordance with its terms, in order to determine the net amount of plaintiff’s damages it will be necessary to deduct therefrom $4,284.62, which the plaintiff realized on the sale of the hulls by reason of the change in the method of manufacture prescribed by the second contract in excess of what it would have received had the linters been manufactured in accordance with the original contract.
The findings of fact show that plaintiff was paid for all linters cut prior to November 28, 1918, at the rate provided *320 in the original contract. All payments made thereafter were in accordance with the supplemental contract. The amount unpaid, computed in accordance with the terms of the origi- . nal contract, is $31,370.69. This amount and the basis of its calculation are stated the same as in the commissioner’s finding no. 20, and no exception was taken to this part of the finding by defendant. We conclude that as a matter of fact it is correct. It appears, however, that the claim of plaintiff, as set forth in the petition, is for a much less sum, the greater part of the difference arising by reason of the amount received for linters sold to others than the United States being stated in the claim to be $40,516.25, but in the finding which we have made to be $24,019.31, and there are other items of the claim which do not exactly agree with the findings. Apparently on account of the number of cases brought by counsel for plaintiff of the same nature some confusion has arisen and plaintiff will be given leave to amend its petition to conform to the evidence. When such amendment has been filed, the court will determine the amount of judgment to be rendered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and Booth, Chief Justice, concur.
MEMORANDUM BY THE COURT
[December 13, 1932]
An opinion has heretofore been rendered in this case holding that the plaintiff is entitled to judgment and giving plaintiff leave to amend its petition in accordance with the findings of fact made by the court and the evidence. Such an amendment now having been filed, it appears that the amount unpaid to plaintiff, in accordance with the terms of the original contract between plaintiff and defendant, as shown by finding XXII made by the court, is $31,370.69. The next to the last paragraph of the opinion of the court shows that it is necessary to deduct therefrom the sum of $4,284.62 in order to ascertain the net amount of plaintiff’s damages. This leaves $27,086.07 for which judgment will be entered in favor of plaintiff.