**MALISSA COMPANY, INC., and Marvin Haynes, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

No. 102–86C.

United States Claims Court.

Nov. 16, 1989.

Stephen T. Sylvester, Grambling, La., for plaintiffs.

Stuart James, with whom were Richard K. Willard, Asst. Atty. Gen., and David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

SMITH, Chief Judge.

Plaintiff Malissa Company entered into a cost-reimbursement services contract with the United States Department of Energy Strategic Petroleum Reserve in 1978. The complaint alleges, *inter alia*, that the government breached the contract in 1981 by withholding money due plaintiff under the contract. After several counts of the complaint were dismissed for lack of subject matter jurisdiction, *Malissa Co. v. United States*, 11 Cl.Ct. 389 (1986), a trial on the merits was held as to the remainder of the complaint. For the reasons set forth below, judgment is for the defendant.

## INTRODUCTION

This decision is in some ways a difficult one for this court to issue. After hearing and deciding the government's motion to dismiss, conducting a week-long trial, and reviewing extensive post-trial briefs, replete with voluminous copies of various records, the court is still left with no clear picture of what money, if any, is owed to this plaintiff by the government. Immediately after the trial, the court indicated to the parties that a settlement of $6000—to—$10,000 might be appropriate. This was so because plaintiff's accounting system provided no clear evidence of an amount that might be due.

Further, the court's sense of the evidence indicated that some amount, in that range, might indeed be due the plaintiff. While that amount might have been a fair settlement, the court is forced by its sacred oath, when deciding a case, to allow only what plaintiff has legally proven. On the most thorough review of all the trial evidence and post-trial submissions, the court unfortunately can find absolutely no basis

for any of plaintiff's claims. Whether this is due to the absence of any basis for those claims, or to the plaintiff's inability to produce coherent financial records, or to present them at trial, this court cannot decide. While in the final result, it does not matter whether the plaintiff has no case, or merely has failed to provide any proof of one, the current situation leaves the court with a strong feeling that much time has been spent with little benefit to the administration of justice.

From everything the court has seen, the defendant has attempted to help plaintiff define any real claims, but to no avail. Courts, it must always be remembered, are not workers of miracles or magic. They cannot, under our adversary system, be given hundreds or thousands of raw documents and be expected to extract both an answer, and a question. This is the parties' duty. And, in this case, no matter how hard the court has tried to find a basis for recovery by plaintiff, it has failed.

## FACTS

On October 16, 1978, plaintiff Malissa Company, Inc. (Malissa) entered into a subcontract with the Small Business Administration (SBA), under which Malissa was to provide mail processing, document preparation, telecopying, word processing and keypunch services for the Department of Energy Strategic Petroleum Reserve (DOE).[1] At the end of the initial ten-month contract period, DOE exercised a one-year renewal option. In 1980, DOE exercised a second one-year renewal option; the second renewal term ended on September 30, 1981, and there were no further renewals.

Over the course of contract performance, Malissa submitted 104 invoices to DOE for payment for services allegedly provided. The contracting officer (CO) questioned whether some of the payments already made on earlier invoices were allowable under the contract, and requested that the DOE Inspector General perform an audit of the contract prior to payment of Malissa's final invoices. On December 12, 1981, Malissa sent a demand letter to the CO, asking that the remaining invoices be paid.

The DOE Inspector General conducted an audit of the contract, and issued a report on September 30, 1982 (hereinafter "the 1982 audit"); the report reflected the Inspector General's view that $22,301 had been overpaid to Malissa. The overpayments fell into three categories: (i) duplicative or unsubstantiated items; (ii) hours claimed in excess of hours worked; and (iii) wages for workers' annual vacation leave and sick leave. DOE delayed payment on the final invoices, and requested that Malissa explain the $22,301 in overbillings. Malissa disputed the findings in the audit, and the parties were unable to resolve the matter.

A final audit was conducted by the DOE Inspector General in 1984 (hereinafter "the 1984 audit"), after which the Inspector General reported that of the $604,701 billed under the contract, only $571,683 of the costs were allowable. Like the 1982 audit, the 1984 audit revealed unsubstantiated billings and unallowable billings for sick and annual leave. The $33,018 discrepancy was recouped by DOE by offsetting the amounts claimed under the still unpaid invoices against the overpayments already made under earlier invoices.

The CO issued a final written decision on September 15, 1984, incorporating the findings of the 1984 audit, and denying Malissa the $33,018 sought. Malissa responded in a July 10, 1985 letter that "we totally disagree with the [a]udit findings," but it did not submit any documents to back up its position.

## PROCEDURAL HISTORY

Malissa filed its complaint[2] in this court on February 18, 1986, asserting jurisdiction

---

1. SBA was the prime contractor under contract no. DA–AC–96–70P01001 with DOE, and let the subcontract at issue to Malissa, but Malissa dealt directly with DOE.

2. The complaint named Malissa Company, Inc. and "Marvin Haynes, President of Malissa Company, Inc." as plaintiffs. Presumably, Mr. Haynes' name was included to furnish a basis for recovering damages for mental anguish; clearly Malissa, a corporation, cannot recover

under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1982). The complaint prayed for judgment in the amount of $18,083,018, itemized as follows: (1) $33,018 for payments withheld under the contract; (2) $17,500,000 for a "lost" mail processing contract, allegedly "fraudulently" awarded to another firm, "which [Malissa] had a good chance to obtain"; (3) $500,000 for mental anguish; and (4) $50,000 in attorneys' fees.

The government filed a motion to dismiss, or in the alternative, for summary judgment, on all counts of the complaint. The court granted the motion in part. *Malissa Co. v. United States*, 11 Cl.Ct. 389 (1986). The government argued that the court could not take jurisdiction over the $33,018 claim, on the ground that the July 10, 1985 letter from Malissa to the CO did not constitute a request for a final CO decision; such a request is a jurisdictional prerequisite for a suit in this court under the CDA. The court rejected the government's argument, and ruled further that if the December 12, 1981 letter from Malissa to the CO were considered Malissa's request for a final CO decision, the CO's failure to issue a decision within sixty days did not trigger the running of the twelve month limitations period under the CDA. 11 Cl.Ct. at 390–91.

The court dismissed with prejudice the $17,500,000 claim for damages for loss of a future contract, for the reason that lost profits on such a contract were too speculative in nature and lacked the requisite nexus to the alleged breach of contract for the court to entertain the claim. 11 Cl.Ct. at 391–92. Malissa voluntarily withdrew its $500,000 claim for damages for mental anguish. Finally, the court dismissed the $50,000 claim for attorneys' fees as premature. Plaintiff filed a cross-motion for summary judgment as to liability, which motion was denied by the court on March 27, 1987. Thus, the $33,018 claim remained for trial on the merits.

## DISCUSSION

### I. The Burden of Proof

The court's rulings on the pretrial motions narrowed the issues for trial down to a simple few: (i) whether Malissa submitted duplicative invoices for payment; (ii) whether Malissa submitted invoices for work not actually performed; (iii) whether wages for workers' sick and annual leave were properly claimed. It has been plaintiff's contention throughout the litigation that the DOE Inspector General's 1984 audit was erroneous, and that withholding payments due Malissa on the basis of that audit was a breach of contract. "This court has long held that in contract cases, where plaintiff has alleged a breach of contract, the plaintiff must shoulder the burden of 'establishing the fundamental facts of liability, causation, and resultant injury.'" *G & H Machinery Co. v. United States*, 16 Cl.Ct. 568, 571 (1989) (*quoting Wunderlich Contracting Co. v. United States*, 173 Ct.Cl. 180, 199, 351 F.2d 956, 968 (1965)).

When damages are sought, the contractor must prove the amount of its damages "with sufficient certainty so that the determination of damages will be more than mere speculation." *Willems Indus., Inc. v. United States*, 155 Ct.Cl. 360, 376, 295 F.2d 822, 831 (1961), *cert. denied*, 370 U.S. 903, 82 S.Ct. 1249, 8 L.Ed.2d 400 (1962). *Accord Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir.1987). If, as here, the plaintiff contests a government audit in which certain costs are disallowed, the plaintiff must produce probative evidence as to the allowability of the costs in order to recover. *See Joseph H. Roberts v. United States*, 174 Ct.Cl. 940, 949, 357 F.2d 938 (1966) (appearance of rejected cost claims on plaintiff's damages

such damages. Since the only portion of the complaint which is properly before the court is a claim for payments allegedly wrongfully withheld under the subcontract between the Malissa Company and the SBA, Mr. Haynes has no standing to continue as a party to the suit, *i.e.*, he has no concrete stake in the outcome. Mr. Haynes is neither a party to the underlying subcontract, nor is he in privity with a party to the contract, and were the court to rule against defendant, Mr. Haynes would recover nothing personally.

schedule, by itself, or allocation of certain overhead costs to the contract where no basis for allocation is shown, is insufficient for plaintiff to carry his burden of proof); *G.M. Shupe, Inc. v. United States*, 5 Cl.Ct. 662, 719 (1984) (subcontractor could not recover allegedly compensable costs for trenching and grouting work, where the manner in which the claim was presented furnished no reasonable basis for the court to compute the costs).

Malissa's presentation of evidence at trial was confusing, at best. Moreover, Malissa insisted upon briefing the issue of the allegedly fraudulent and malicious motives of various government agents, an issue which was irrelevant to the $33,018 claim before the court. Malissa has submitted numerous documents, including invoices, correspondence, and time sheets,[3] but nowhere has it provided the court with a coherent guide to the documents.[4] In short, Malissa has improperly attempted to shift its burden of proving the allowability of the costs in dispute to the court. This the court cannot countenance.

If Malissa and its counsel could not make sense of their own evidence, then they should have either retained the services of someone who could make sense out of the documents, or abandoned the lawsuit. Ideally Malissa would have presented the testimony of an independent, disinterested auditor to rebut the recommendations of the DOE Inspector General in the 1984 audit. *See, e.g., Todd Shipyards Corp.,* ASBCA No. 14409, 71–2 BCA ¶ 9102 (1971)

(contractor challenging government audit presented testimony of its financial vice-president, its comptroller, who was an accountant, and two certified public accountants who had performed their own audit of the contractor's records). While the court does not demand that Malissa, a small business, retain a nationally known accounting firm to audit its books, as the contractor in *Todd Shipyards* did, the court is justified in expecting a coherent presentation of plaintiff's evidence.

At trial, the government introduced the 1984 audit report into evidence. It also presented the testimony of Mr. Robert Rozanski, who performed the audit. Mr. Rozanski has a B.S. in accounting, as well as over twenty years' experience as an auditor with the government. The court found Mr. Rozanski's explanation of the audit results to be lucid and credible. By contrast, Malissa presented a hodge-podge of witnesses,[5] none of whom could explain the significance of the mass of documents it submitted as appendices to various briefs.

## II. The Audit

The only claim properly before the court is the dispute over the $33,018 withheld from Malissa to recoup for the alleged overpayments. Malissa's burden of proof, then, is to *disprove* the audit, *i.e.,* to show that the charges on the unpaid invoices were allowable. As plaintiff's counsel recognized in his "Reply to Defendant's Post–Trial Brief," the dispute centers on what the reams of documents mean: "[B]oth parties to this litigation are using

---

**3.** The appendix to "Plaintiff's Response to Defendant's Motion to Dismiss and Plaintiff's Cross–Motion for Summary Judgment as to Liability" is over 560 pages long. The appendix to Malissa's post-trial brief is some 440 pages long.

**4.** The pagination system in the appendices to Malissa's briefs is incomprehensible; the briefs make numerous references to pages which do not appear, or at least cannot be located, in the relevant appendices. Furthermore, many of Malissa's documentary submissions are either illegible or of such poor reproduction quality that they are rendered worthless for any purpose. The court has included as an Appendix to this opinion three exemplars of Malissa's evidence. The page numbers are plaintiff's own. "Page 8" is plaintiff's summary of the govern-

ment audit which it claims is erroneous. "Page 26c" is an employee expense voucher. "Page 18" is taken from plaintiff's proposed stipulations.

**5.** Among the witnesses called by plaintiff was Mr. DeQuilla Wayne White, who until shortly before trial was the attorney of record for plaintiff. Citing a "conflict of interest," Mr. White withdrew as counsel of record, but he appeared to continue to direct the presentation of plaintiff's case. At trial, Malissa called Mr. White to testify; he stated that he prepared Malissa's documentary submissions personally, and stressed that he knew "exactly" what was in the submissions. Unfortunately, Mr. White could not impart any of his understanding of the documents to the court.

the same numbers and the same documents."

In performing the audit, Mr. Rozanski relied primarily on Malissa's own records, as well as the relevant FAR provisions. He compared the invoices submitted to DOE with Malissa's payroll records and the time sheets regularly kept by Malissa supervisors. Mr. Rozanski also examined cancelled checks, in order to determine whether employees were actually paid for hours claimed.

FAR 31.201-2(a) provides in relevant part:[6] "The factors to be considered in determining whether a cost is allowable include the following: (1) Reasonableness[;] (2) Allocability[;] (3) Standards promulgated by the CAS board ...[;] (4) Terms of the contract[;] (5) Any limitations set forth in this subpart."

This case does not involve a question of reasonableness or of allocability to the contract, nor does it involve issues of cost-accounting standards. Rather, the issue is simply whether Malissa's billings were compensable under the terms of the contract. The 1984 audit broke down the disputed $33,018 into two groups, $17,017 in claimed salaries and wages, and $16,001 in annual and sick leave.

With regard to the first category, claimed salaries and wages, the contract did not provide for payment to Malissa for hours not worked or for work already billed. Furthermore, the auditor's view that overtime hours were not compensable unless someone other than the employee to receive payment approved the overtime, is correct. Thus, the auditor properly recommended that the CO disallow the costs Mal-

issa claimed in the disputed invoices, where the invoices were duplicative, or where the invoices represented unauthorized overtime or work not actually performed.

With regard to the second category, annual and sick leave, the CO and Malissa (through its president, Mr. Haynes) agreed to a retroactive modification of the contract on June 4, 1981, which provided for ten days of annual leave and twelve days of sick leave per year per member of the direct labor pool. No vacation or sick leave was allowed for members of the indirect labor pool; "indirect" employees were those who were called in to replace those employees on sick and annual leave. Furthermore, under Modification No. 8 to the contract, sick and annual leave time was not compensable unless it was actually taken, and could not be accumulated, or carried over, from year to year. Malissa would be entitled to recover some or all of the questioned $16,001 in annual and sick leave compensation only if it could show that its billings did not exceed the annual and sick leave allowable under the contract.

Again, Malissa's burden is to disprove the auditor's findings. What follows is a breakdown, invoice by invoice, of the costs which the auditor recommended that the CO disallow. Malissa has failed to show that any of the disallowed costs were reimbursable under the contract.

Summary of Disallowed Costs

Column I—number of hours actually worked or overtime hours actually approved

Column II—number of hours billed

Column III—amount overbilled, in dollars, to DOE [underbilled]

| Invoice no.(s) | I Hrs. | II Hrs. | III Dollars | Explanation [7] |
|---|---|---|---|---|
| 19 | 8880 | 9356 | $4603.00 | Summary bill for invoices 1–18; 476 hr. overcharge |

**6.** The ASPR provision in effect at the time of the contract is substantially similar.

**7.** Key:
ot—overtime
no notation—regular hours
hol—holiday

x—hours claimed in excess of hours worked or approved
+—credit to Malissa for underbilling
*—in excess of what was provided for in the contract

| Invoice no.(s) | I Hrs. | II Hrs. | III Dollars | Explanation [7] |
|---|---|---|---|---|
| 20 | 0 | 12 | $138.60 | x ot |
| 22 | 550.5 | 640 | 865.46 | x |
| 23 | 575 | 640 | 628.55 | x |
| 24 | 529.5 | 640 | 1068.59 | x |
| 24 | 0 | 3 | 34.65 | x ot |
| 25 | 586 | 640 | 522.18 | x |
| 25 | 42 | 60 | 207.90 | x ot |
| 26 | 619.5 | 640 | 198.23 | x |
| 26 | 67.5 | 80.5 | 150.15 | x ot |
| 27 | 663.5 | 640 | [227.24] | + |
| 27 | 11.5 | 7 | [51.97] | + ot |
| 28 | 630.5 | 640 | 101.53 | x |
| 28 | 67 | 16 | [589.05] | + |
| 29 | 579 | 640 | 668.85 | x |
| 29 | 5 | 70 | 750.75 | x ot |
| 30 | 635 | 640 | 54.25 | x |
| 31 | 1 | 0 | [11.55] | + ot |
| 35 | 5 | 0 | [61.15] | + ot |
| 38 | 2 | 6.5 | 55.03 | x ot |
| 39 | 629 | 640 | 111.70 | x |
| 40 | 2 | 0 | [25.90] | + ot |
| 42 | 626 | 632 | 65.10 | x |
| 43 | 629 | 630 | 12.85 | x |
| 43 | 1 | 2.5 | 18.34 | x ot |
| 44 | 598 | 608 | 100.85 | x |
| 45 | 612 | 608 | [43.40] | + |
| 46 | 614 | 632 | 145.30 | x |
| 46 | 2.5 | 0 | [32.38] | + ot |
| 47 | 624 | 640 | 173.60 | x |
| 47 | 41 ot | 58 ot | 207.91 | x |
| 48 | 619.5 | 636 | 179.02 | x |
| 48 | 39 | 40.5 | 18.34 | x ot |
| 50 | — | — | 976.46 | Vacation and sick leave* |
| 53 | 607 | 622 | 162.75 | x |
| 55 | 624.5 | 640 | 168.17 | x |
| 55 | 36 | 38.5 | 30.57 | x ot |
| 56 | 600 | 640 | 434.00 | x |
| 56 | 49.5 | 70 | 250.71 | x ot |
| 58 | 637 | 640 | 32.55 | x |
| 58 | 25 | 51 | 317.98 | x ot |
| 59 | 605.5 | 640 | 374.32 | x |
| 59 | 5.5 | 38.5 | 403.59 | x ot |
| 62 | 508 | 512 | 46.12 | x |
| 62 | 10 | 13 | 38.85 | x ot |
| 63 | 624 | 632 | 92.24 | x |
| 63 | 150.5 | 186 | 459.72 | x ot |
| 65 | 612.5 | 640 | 317.07 | x |
| 65 | 12 | 18 | 77.70 | x ot |
| 66 | 702 | 720 | 207.54 | x |
| 68 | 679 | 696 | 207.54 | x |
| 68 | 28 | 36.5 | 110.00 | x ot |
| 69 | 715 | 720 | 57.65 | x |
| 69 | 1 | 0 | [12.95] | + ot |
| 71 | 704 | 720 | 184.48 | x |
| 72 | 693 | 720 | 426.61 | x |
| 72 | 22 | 13 | [168.35] | + ot |
| 73 | 650 | 720 | 807.10 | x |
| 73 | 0 | 9 | 116.55 | x |
| 75 | 0 | 31.5 | 407.93 | x |
| 75 | 0 | 72 | 830.16 | x hol |

| Invoice no.(s) | I Hrs. | II Hrs. | III Dollars | Explanation [7] |
|---|---|---|---|---|
| 76 | 0 | 10.5 | $135.97 | x ot |
| 77 | 0 | 2.5 | 28.83 | x |
| 78 | 0 | 1 | 12.95 | x ot |
| 80 | 0 | 12.5 | 161.88 | x ot |
| 85 | 0 | 6 | 77.70 | x ot |
| 89 | 64 | 72 | 92.24 | x |
| 91 | 0 | 8 | 103.60 | x |
| 100 | 2 | 0 | [23.06] | + |
| 100 | 6 | 0 | [77.70] | + ot |
| 101 | — | — | 352.00 | x |
| 102 | — | — | 922.00 | Rebilling for leave disallowed on inv. 97 |
| 103 | — | — | 9253.00 | Billing for unused leave, offset by leave actually taken |
| Various | — | — | 3616.00 | Excess leave per 1982 audit, adjusted |
| Various | — | — | 1858.00 | Excess leave inv. 49, 57, 60, 67, 70, 84 |
| TOTAL OVERBILLINGS | | | $33,908.56 | |

## CONCLUSION

When a contractor challenges a government audit under which certain costs are disallowed, it must come forward with an affirmative showing that the costs are allowable in order to recover. The mere allegation that certain payments are due is insufficient. Malissa's burden, therefore, was to disprove the 1984 audit. Although it has presented numerous documents to the court, it has failed to establish that any of the $33,018 in dispute was wrongfully withheld by the government.[8] Accordingly, Malissa's claim must be denied. The Clerk of the Court is directed to enter judgment dismissing the complaint.

## APPENDIX

The following are examples of evidence submitted by Malissa, in support of its claim that the 1984 audit was erroneous.

8. As the court views the evidence, it appears that the Malissa overbilled DOE $33,908.56, whereas the DOE only withheld $33,018. However, defendant at trial only claimed a right to withhold $33,018, and the court declines at this point to reexamine the $890 discrepancy, which inures to the benefit of Malissa.

SUMMARY

NO. HOURS BILLED BY MALISSA ... INV. PER DAILY TIME
AND ATTENDANCE SHEETS

Billed & approved     ... hrs         ...hours
Per audit                              See page ... & ...
        Difference    ......           Attached ...

INVOICE 22

PER ME. FEES SUMMARY                   HOURS WORKED BY MALISSA
                                       COMPANY, INC.

Billed & approved     ...  ...         ... ... ...
Per audit             5.. 1/2 hrs.     See page #550, 551, & ...
        Difference    9. 1/2 hrs.

INVOICE #23

PER ME. FEES SUMMARY                   HOURS WORKED BY MALISSA
                                       COMPANY, INC.

Summary "A" John E. Beh
Employment From 8-28-78 thru 1-2-1978

Description                          Item Cost

Moving Cost + Temporary          Gasoline  $617.70
Living Cost Provided For          + oil
Mrs John E. Beh and her
Family - Paid For By
Fortech Company Inc.

Temporary Living Expenses
10-14-78 - 1-2-79

Amount Owed John E. Beh

                                              $735.88
Sick Leave     5 days @ ...                    300.00
Personal leave  5 days @                       300.00
Vacation Pay for 12/23/78 - 12/29/78           150.00
          2 days @ 7.50

Gulf Credit Card                                 -0-
Bill                                           15.46

          Total Due                        $1,530.88

[Editor's Note: Page 18 is blank.]