MOBILITY SYSTEMS AND
EQUIPMENT COMPANY,[1]
Plaintiff,

v.

THE UNITED STATES, Defendant.

No. 99–884C.

United States Court of Federal Claims.

Dec. 11, 2001.

George Adams, pro se, of Downey, California, for plaintiff.

Virginia G. Farrier, Commercial Litigation Branch, with whom were Mark A. Melnick, Assistant Director, David M. Cohen, Director, and David W. Ogden, Acting Assis-

1. George Adams is the owner and founder of Mobility Systems and Equipment Company (MSE). MSE went through bankruptcy proceedings in 1997, during which Mr. Adams used his name and the company's name interchangeably. He does the same in this case. For clarity the court refers to Mr. Adams as the plaintiff since MSE is bankrupt.

tant Attorney General, U.S. Department of Justice, of Washington, D.C., for defendant.

## OPINION

SMITH, Senior Judge.

This case is before the court on defendant's Motion to Dismiss. Defendant's motion asserts that plaintiff's claim should be dismissed pursuant to Rule 12(b)(1) or alternatively 12(b)(4) of the Rules of the United States Court of Federal Claims. After reviewing the briefs, the court hereby GRANTS defendant's motion because plaintiff lacks standing to file the complaint before this court and this court lacks jurisdiction to hear the case.

## FACTS

Plaintiff George Adams is the founder of Mobility Systems and Equipment Company (MSE), a now bankrupt company. MSE was founded in 1970 with the purpose of formulating and applying new design techniques in the field of transportation. In 1976, MSE added a facility that allowed it to test new vehicles entering the U.S. market for compliance with the Federal Motor Vehicle Safety Standards (Standards). MSE competed for and obtained several contracts with the National Highway Traffic Safety Administration's Office of Vehicle Safety Compliance to test vehicles against the Standards. The Office of Vehicle Safety Compliance contracts with different companies to test vehicles and determine whether those vehicles meet the safety requirements of the Standards. This case involves three contracts between the plaintiff and the National Highway Traffic Safety Administration (NHTSA).

MSE was selected after competitive bidding by the NHTSA to conduct tests on a variety of vehicles including school buses and automobiles. Three of those contracts— DTNH22–92–C–01004, DTNH22–93–C–01007, and DTNH22–93–C–01039—were terminated for default by the Contracting Officer (CO) on March 2 and 10, 1995. On April 11, 1995, MSE elected to appeal all three terminations to the Department of Transportation Board of Contract Appeals (DOTBCA).

On March 8, 1996, the parties successfully completed settlement negotiations. The settlement stipulated that the NHTSA would pay MSE $45,000 on outstanding contracts and MSE would waive any additional right to its claims on those contracts. Both parties recognized the Settlement as the full and final resolution of the dispute. Pursuant to the Settlement Agreement, the DOTBCA dismissed with prejudice all three of MSE's appeals on March 18, 1996. After MSE executed the contract modifications required by the settlement, NHTSA issued the settlement check on April 17, 1996.

A year after settling with NHTSA, Mr. Adams filed for bankruptcy protection. Mr. Adams listed MSE as the other name he used on his bankruptcy application. He did not list the disputed contracts as outstanding causes of action on any of the bankruptcy schedules that he filed. The bankruptcy case was closed by the bankruptcy court on August 1, 1997.

On October 21, 1999, the plaintiff filed a complaint with this court. In the complaint, plaintiff alleges that 1) NHTSA breached its three contracts with MSE discussed above by pushing MSE out of business, 2) the NHTSA breached the settlement agreement because payment was later than agreed to in the settlement; and 3) MSE entered the settlement agreement under duress.

Defendant responded to the complaint by filing a motion to dismiss for lack of jurisdiction. Specifically, defendant alleges that the Contract Disputes Act and the Election Doctrine barred plaintiff's action from being brought in this court at this time. In addition, defendant alleges that plaintiff lacks standing to bring this case because the plaintiff failed to list the disputed contracts on any of the bankruptcy schedules he filed with the bankruptcy court.

Both parties agreed to proceed without oral argument on the motion to dismiss.

## DISCUSSION

### I. Standard of Review

RCFC 12(b)(1) requires the court to dismiss a complaint when the court lacks sub-

ject matter jurisdiction over the action and RCFC 12(b)(4) requires dismissal if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law. In ruling upon a motion to dismiss, a court must grant the motion "when the facts asserted by the plaintiff do not entitle him to a legal remedy." *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000). See also *Moyer v. United States,* 190 F.3d 1314, 1317–18 (Fed. Cir.1999); *New York Life Ins. Co. v. United States,* 190 F.3d 1372, 1377 (Fed.Cir.1999). In addition, the court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Boyle,* 200 F.3d at 1372. *See also Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998).

## II.  Jurisdiction

The United States is immune from suit unless Congress specifically waives the government's sovereign immunity. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). The Tucker Act grants the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded ... upon ... any Act of Congress." 28 U.S.C. § 1491 (1988). The Contract Disputes Act of 1978(CDA) governs the dispute in this case. The CDA allows a plaintiff to bring an action before this court if 1) a valid claim was submitted to the contracting officer (CO); and 2) a CO issued a final decision on the case. *See* 41 U.S.C. § 605(a) (1988 & Supp.2001). However, as the court will discuss below, the CDA requires the plaintiff to choose between appealing a final decision of the CO in this court or before the board of contract appeals for that agency—a principle known as the Election Doctrine. Therefore, while the plaintiff could appeal the CO's decision to this court, he had to choose between this court and the Department of Transportation's Board of Contract Appeals. He cannot appeal the same cause of action in both fora.

### A.  The Election Doctrine

■ The Contract Disputes Act (CDA) does not dictate where a plaintiff must appeal a Contracting Officer's decision. Instead, the CDA allows a plaintiff to choose between an agency's board of contract appeals and this court. However, it requires the plaintiff to make a choice. *See* 41 U.S.C. § 605(b) (1988) ("The contracting officer's decision on the claim shall be final and conclusive and not subject to review ... unless an appeal or suit is timely commenced ..."); 41 U.S.C. § 607(d) (1988 & Supp.2001) ("Each agency board shall have jurisdiction to decide any appeal from a decision of a contracting officer (1) relative to a contract made by its agency..."); 41 U.S.C. § 609(a)(1) (1988 & Supp.2001) ("Except as provided in paragraph (2), and *in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board,* a contractor may bring an action directly on the claim in the United States Court of Federal Claims ..." (emphasis added)). Essentially, the Election Doctrine serves as a form of *res judicata.* Its purpose is to settle controversies within one forum. While a litigant must have his day in court, he is not entitled to repeat that same day in a different court.

In this case, the Contracting Officer notified the plaintiff that he could choose between filing an appeal with the DOTBCA or the Court of Federal Claims in each termination letter he received from the NHTSA. The letter detailed the deadlines for appealing to each entity and also stipulated that he could choose which entity to pursue in each contract ("Instead of appealing to the DOT Board of Contract Appeals, MSE may bring an action directly in the U.S. Claims Court [sic] ..."). The letter also listed what steps should be taken to appeal the Contracting Officer's decision.

The plaintiff chose to pursue his case before the DOTBCA rather than the Court of Federal Claims. After conducting some discovery and preparation of the case before the DOTBCA, the parties agreed to settle the case. That settlement was a final disposition of the case because they agreed to dismiss the case with prejudice. The DOTBCA granted the Motion to Dismiss with Preju-

dice on March 18, 1996. The only place the plaintiff could appeal the decision at that point was to the Court of Appeals for the Federal Circuit. *See* 41 U.S.C. § 607(g)(1) (1988). However, the plaintiff only had 60 days to appeal a decision to the Federal Circuit and that time expired well before the complaint in this case was filed.

However, even if the Election Doctrine alone did not preclude plaintiff from pursuing this action, timeliness does. For an action to be brought before this court, it must be brought within twelve months of the receipt of a final decision from the Contracting Officer. *See* 41 U.S.C. § 609(a)(3) (1988). Defendant sent letters of notification of termination for default of MSE's contracts with NHTSA on March 2 and 10, 1995. The March 2 letter was received by MSE on March 3. The plaintiff had 12 months from March 3, 1995, to file an action in this court, which he failed to do. Therefore, this court is unable to entertain this action. While there is no record of when plaintiff received the termination letters dated March 10, 1995, the court does have copies of the letters plaintiff used to appeal those decisions to the DOTBCA. It is simple logic that plaintiff received the second and third letters prior to April 11, 1995, the date that the plaintiff appealed the terminations to the DOTBCA. For the reasons discussed above, the Court of Federal Claims has no jurisdiction to hear this case.

### B. Standing

█ The government has also requested dismissal of this case because plaintiff lacks standing to sue under bankruptcy law. During a bankruptcy proceeding the assets of the plaintiff, both tangible and intangible, are pulled into a bankruptcy estate. *See* 11 U.S.C. § 541 (1993 & Supp.2001). Any interests that the debtor holds at the time he begins his bankruptcy action become a part of his bankruptcy estate. *See In re Comp,* 134 B.R. 544 (Bankr.M.D.Pa.1991). Because § 541 is broad, those interests include "causes of action." *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 707 (9th Cir.1986). At the close of a bankruptcy case, "property of the estate that is not abandoned ... and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d) (1993). Courts have made it clear that the bankruptcy estate trustee cannot abandon property to the debtor at the close of the bankruptcy case if that property or interest was never listed on a bankruptcy schedule. Failure to list the interest on a bankruptcy schedule leaves that interest in the bankruptcy estate. *See generally Tyler House Apartments, Ltd. v. United States,* 38 Fed.Cl. 1, 6 (1997); *In re Capozzi,* 229 B.R. 250 (Bankr.S.D.Fla.1999); *In re Winburn,* 167 B.R. 673 (Bankr.N.D.Fla. 1993). However, if a cause of action is listed on a schedule so the trustee may knowingly abandon it, courts will consider it outside the bankruptcy estate once the bankruptcy case is closed. *See In re Enriquez,* 22 B.R. 934 (Bankr.D.Neb.1982). The key is whether the trustee had full disclosure so that knowing abandonment of the property could be made.

█ It is clear in this case that there was no such knowing abandonment by the trustee of plaintiff's possible causes of action against the NHTSA. In 1997 the plaintiff filed for Chapter 7 protection under the Bankruptcy Code. In his voluntary petition for bankruptcy, the plaintiff listed MSE as another name he uses. However, when he completed the required schedule of his assets and liabilities, plaintiff failed to list the now-disputed MSE contracts with NHTSA. In his reply to defendant's Motion to Dismiss, plaintiff says he did not include the contracts because he believed the settlements were for the full dispute. The court accepts this as true. However, that does not change the ownership of those claims at this time. Thus, any claims plaintiff may have in those contracts can only be brought by the bankruptcy trustee on behalf of the bankruptcy estate. Therefore, plaintiff lacks standing to bring this suit before the Court of Federal Claims, and the claims must be dismissed.

### III. Failure to State a Claim

In the complaint, plaintiff alleges that 1) NHTSA breached its contract with MSE by pushing MSE out of business, 2) NHTSA breached the settlement agreement because payment was later than agreed to in the

settlement; and 3) MSE entered the settlement agreement under duress.

### A. Breach of the Settlement Agreement

Plaintiff alleges in the complaint that the defendant breached the settlement agreement by issuing the check later than the date agreed to by the parties. Taking the facts as stated in the complaint and supplemental filings in the light most favorable to the plaintiff, he failed to state a claim upon which relief can be granted.

In the settlement agreement, NHTSA agreed to pay MSE within 10 working days of the later of two dates: 1) the dismissal of the actions before the DOTBCA or 2) NHTSA's receipt of contract modifications and executed contractor's releases. While the settlement agreement was signed by Mr. Adams on March 1 and Ms. Boor, a contracting officer with NHTSA, on March 8, 1996, the motion to dismiss the actions before the DOTBCA was not granted until March 18, 1996. Thus, March 18 became one of the two triggering dates. While the plaintiff states he signed and returned the contract modifications and executed contractor's releases on March 20, they were not received by Ms. Boor until April 12, 1996. Because the receipt of the documents became the last triggering date in the settlement agreement, the ten day clock began to run on the settlement payment only at that time.

It appears from the defendant's attachments that the check was cut on April 17; the plaintiff does not list a date that the check arrived. Based on the facts as plaintiff presented them in the complaint and supporting documentation and the response to defendant's motion to dismiss, the defendant paid the settlement within ten business days of the receipt of the contract modifications and executed contractor's releases. Thus, the plaintiff presents no evidence that defendant breached the settlement agreement.

### B. Duress

■ The plaintiff alleges that the defendant knew of MSE's precarious financial position and willfully pushed the company over the brink into bankruptcy by forcing the plaintiff to accept the settlement agreement. While duress is a broad legal concept with many facets, this court has identified three factors that must be present when a plaintiff alleges they accepted a contract under duress. Those factors are: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Fruhauf Southwest Garment Co. v. United States,* 111 F.Supp. 945, 951, 126 Ct.Cl. 51 (1953); *see also United States v. Bethlehem Steel Corp.,* 315 U.S. 289, 301, 62 S.Ct. 581, 86 L.Ed. 855 (1942); *French v. Shoemaker,* 14 Wall. (81 U.S.) 314, 332 (1871). In addition, the plaintiff must show "that the party benefitted thereby constrained or forced the action of the injured party, and even threatened financial disaster is not sufficient." *Fruhauf,* 111 F.Supp. at 951. It has also become "settled law that the mere stress of business conditions will not constitute duress where the defendant was not responsible for those circumstances." *Id. See also Lawrence v. Muter Co.,* 171 F.2d 380, 382 (7th Cir.1948), *cert. denied, sub nom. Metropolitan Trust Co. v. Muter Co.,* 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1720 (1949); *Silliman v. United States,* 101 U.S. 465, 471, 25 L.Ed. 987 (1879).

■ On the facts of this case as presented, the court cannot find any evidence that MSE signed the settlement agreement under duress. First, the plaintiff has admitted in its motion to reject defendant's motion to dismiss that the settlement was in full and was final. In addition, the plaintiff has not argued that he was forced to involuntarily enter the settlement agreement. Second, while the plaintiff may believe that the circumstances he faced at the time of the settlement offered him no other alternative, the facts do not indicate that he was foreclosed from taking other actions. During the negotiations, MSE hoped the settlement agreement would "present possible solutions to MSE's extreme financial problems." When it became clear that NHTSA would not settle for the full amount of the contracts, plaintiff could have walked away from the settlements and continued with the litigation before the DOTB-

CA. However, he chose to settle anyway. As stated above "the mere stress of business conditions" alone is not sufficient to find duress. Third, the NHTSA provided opportunities for MSE to fix the problems with the disputed contracts prior to terminating for default. This hardly portrays evidence of duress, but rather the opposite.

In *Adler Construction Company v. United States*, the court found that dire economic conditions did not equal coercion. 423 F.2d 1362, 1365, 191 Ct.Cl. 607 (1970). In that case, as in this, the plaintiff settled with the government for a fraction of its total claim after extensive arms-length negotiations. In *Farmers & Ginners' Cotton Oil Company v. United States*, the Court of Claims found duress because the actions of the defendant were "not only illegal but would have resulted in irreparable injury" as well. 76 Ct.Cl. 294, 318, 1932 WL 2034 (1932). The plaintiff has not shown any evidence like that in *Farmers & Ginners' Cotton Oil Company*. Therefore, plaintiff's claim must fail.

### C. Breach of Contract

After several careful and thorough readings of the complaint and numerous appendices the plaintiff and defendant have submitted in this case, this court is unable to determine what the plaintiff is alleging in this count of the complaint. It is unclear whether the plaintiff is referring to the underlying contracts or to the settlement agreement. In addition, the original contracts have not been submitted to the court though the Election Doctrine would bar the court form considering them in any event.

It is not the role of this court to divine what the parties are attempting to argue, but to rule on the merits of those arguments. As this court has previously stated, "...the court is justified in expecting a coherent presentation of plaintiff's evidence." *Malissa Co., Inc. v. United States*, 18 Cl.Ct. 672, 675 (1989). No such presentation was made on this particular claim, requiring the court to dismiss it.

### *CONCLUSION*

Under the Election Doctrine, this court does not have jurisdiction over this dispute.

When the plaintiff chose to challenge the contract terminations before the DOTBCA, he lost the right to challenge those same terminations here. In addition, under the bankruptcy regulations, the plaintiff lacks standing to bring this action. Instead, the bankruptcy trustee is the only person who could raise these claims because the claims were not listed on plaintiff's bankruptcy schedules. Therefore, defendant's motion to dismiss under Rule 12(b)(1) is GRANTED.

As to the 12(b)(4) motion the plaintiff has shown no evidence that the agreement was breached or that economic duress caused it to be entered into. Therefore, the defendant's motion to dismiss under 12(b)(4) is also GRANTED. The Clerk of the Court is directed to dismiss the complaint. Each party will bear its own costs.

IT IS SO ORDERED.