637 P.2d 305

Velma J. MOOREHEAD; Velma J. Moorehead, in her capacity as president of the "Citizens Against Annexation," Petitioners,

v.

The Hon. Jack T. ARNOLD, Judge of the Pima County Superior Court; City of Tucson, a body politic and corporate; Daniel Benitez, Director of Human & Community Development of the City of Tucson, a body politic and corporate; Ray Leon, Annexation Coordinator of the City of Tucson, a body politic and corporate, Respondents,

and

City of Tucson, a body politic and corporate; Daniel Benitez, Director of Human & Community Development of the City of Tucson, a body politic and corporate; Ray Leon, Annexation Coordinator of the City of Tucson, a body politic and corporate, Real Parties in Interest.

No. 2 CA–CIV 4187.

Court of Appeals of Arizona, Division 2.

Oct. 19, 1981.

Rehearing Denied Nov. 25, 1981.

**504**

John William Lovell, Tucson, for petitioners.

Frederick S. Dean, City Atty. by Thomas J. Wilson, Asst. City Atty., Tucson, for respondents.

BIRDSALL, Judge.

Is petitioner, in her individual capacity and as president of the Citizens Against Annexation, entitled to inspect certain petitions for annexation of an area northwest of the city by the City of Tucson? That is the question presented by this petition for special action. The respondent court, in similar proceedings below, refused to order disclosure of the petitions. We do not agree with that ruling and since the circumstances justify appellate intervention at this juncture, we assume jurisdiction.

A.R.S. § 39–121 provides:

"Public records and other matters in the office of any officer at all times during office hours shall be open to inspection by any person."

On September 2, 1981, petitioner requested copies of the petitions and copies of any signatures on petitions plus copies of any other records which Messrs. Benitez and Leon might have indicating citizens' approval of the Wetmore/Oracle II Proposed Annexation. This request was refused and petitioner sought judicial review in superior court, as authorized by A.R.S. § 39–121.02. It was established at a hearing that the City of Tucson had been actively engaged in soliciting signatures for the annexation petitions. It also appeared that the proposed annexation was controversial and that petitioner, a member of the opposition, wanted access to the signed petitions in order to contact individual signers with a view toward convincing them to withdraw their signatures.

Mr. Benitez, director of Human and Community Development of the city, testified that the completed petitions are filed in his office and that Mr. Leon, annexation coordinator of the city, is custodian. He stated that he had refused Ms. Moorehead's request for inspection because the city assures potential signers who are concerned about the confidentiality of their signing that the petitions will not become public records until the mayor and council have adopted the annexation ordinance. He also stated that his ability to process an annexation would be considerably hampered if people could not be assured that their signing was confidential, that it was his job to get out and annex as much of the county as he could, and that recent policy of the mayor and city council had been to act on the annexation the first time it was presented on their agenda. Mr. Benitez testified that two commercial property owners had told him they did not want him to let anybody else know that they had signed the petition. He admitted that the city was eager to annex the property because the 2% sales tax that would be received from Tucson Mall, a large, new shopping center, was "critical to the City."

Two individuals who had signed an annexation petition testified. One testified that she probably would have signed the petition even if she had expected it to be made public but had always assumed that her signing would not be made public. The other witness also testified that he had assumed his signing was a private matter but really had no objection to anybody knowing that he had signed the petition.

The respondent court, in denying relief, concluded that revealing signatories in this instance without the signers' consent and before presentation of the petition to the governing body might have "a detrimental influence on people signing their names to petitions in similar circumstances."

The validity of an annexation ordinance depends upon the presentment of annexation petitions which substantially comply with A.R.S. § 9–471. *Town of Scottsdale v. State*, 98 Ariz. 382, 405 P.2d 871 (1965). An individual signer may withdraw his signature at any time before affirmative legislative action has commenced upon a petition for annexation. *State v. City of Phoenix*, 74 Ariz. 46, 243 P.2d 766 (1952).

There is no requirement that annexation petitions be filed in any particular office. A.R.S. § 9–471 merely requires "presentation" of a petition in writing. *State v. Town of Benson, Cochise County*, 95 Ariz. 107, 387 P.2d 807 (1963). In *Mathews v. Pyle*, 75 Ariz. 76, 251 P.2d 893 (1952), the Supreme Court defined a public record as "one made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference". 75 Ariz. at 78, 251 P.2d 893. Although the annexation petitions do not fall within this definition of "public record," they fall within the statutory classification "other matters." They are therefore subject to inspection by an interested citizen unless they are confidential or of such a nature that it would be against the best interest of the state to permit disclosure. *Mathews v. Pyle, supra; Church of Scientology v. City of Phoenix*, 122 Ariz. 338, 594 P.2d 1034 (App.1979).

Initially we note that there is no statutory prohibition against disclosure as was the case in *Grossman v. Westmoreland II Investors*, 123 Ariz. 223, 599 P.2d 179 (1979). The objective of legislation such as A.R.S. § 39–121 is to allow disclosure and limit secrecy. *Department of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Stivahtis v. Juras*, 13 Or.App. 519, 511 P.2d 421 (1973); *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977).

The burden was on the custodian of these annexation petitions to show why the information sought should not be furnished. *Papadopoulos v. State Board of Higher Education*, 8 Or.App. 445, 494 P.2d 260 (1972); *Alarid, supra*. As noted above, the prime reason given by Mr. Benitez was that the promise of confidentiality to potential signers was an important consideration in their deciding whether to sign for annexation. He stated:

"... the fact that it is confidential and that if we were to divulge the names of people who were on the petitions and breach the confidentiality, that we would be putting ourselves in jeopardy of not being able to get those people who are concerned about the confidentiality to sign for annexation."

The promise of confidentiality standing alone is not sufficient to preclude disclosure. *Alarid, supra*. If the promise of confidentiality were to end our inquiry, we would be allowing a city official to eliminate the public's rights under A.R.S. § 39–121. Breach of this promise, when required by the law of this state, is not a sufficient harm to the public interest to prevent disclosure. *Papadopoulos, supra*. Furthermore, the release of the signers' names cannot be against the public interest because the annexation process is not meant to be clothed in secrecy, but to be subject to open discussion and debate.

The respondent court abused its discretion in denying relief to petitioner. We therefore direct the entry of an appropriate order allowing petitioner to inspect and copy the requested material. In addition, because of the delay occasioned by these proceedings, the order shall allow her a reasonable time from the entry of that order during which no annexation petition shall be presented to the governing body of the City of Tucson.

HATHAWAY, C. J., and HOWARD, J., concur.