985 P.2d 1035

**TOWN OF MIAMI, a municipal corporation of the State of Arizona, Petitioner/Appellant/Cross–Appellee,**

v.

**CITY OF GLOBE, a municipal corporation of the State of Arizona, Respondent/Appellee/Cross–Appellant.**

No. 2CA–CV98–0025.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 1, 1998.

As Corrected Nov. 3, 1998.

Review Denied May 25, 1999.

Law Offices of William E. Farrell By William E. Farrell, Scottsdale, for Petitioner/Appellant/Cross-Appellee.

William L. Tifft, Globe City Attorney, Globe and Kane Jorden von Oppenfeld, Bischoff & Biskind, P.L.C., By Douglas A. Jorden and Amy E. Altshuler, Phoenix, Attorneys for Respondent/Appellee/Cross-Appellant.

BRAMMER, Presiding Judge.

¶1 Appellant Town of Miami challenged appellee City of Globe's annexation of land west of Globe, claiming that the parcel to be annexed was not contiguous to Globe as required by A.R.S. § 9–471(A)(1) and defined by § 9–471(H)(3). Although the trial court found Miami had standing to challenge the annexation, the court granted summary judgment in favor of Globe on the ground that Globe had substantially complied with the statutory annexation requirements. Because Globe was required to strictly, rather than substantially, comply with the statutory requirement that a parcel to be annexed be contiguous to the city seeking its annexation, and because Globe failed to strictly comply with the statute, we reverse. We reject Globe's claims in its cross-appeal[1] that the trial court erred in finding that it had failed to strictly comply with the statute and in

1. When a successful party seeks only to uphold the judgment for reasons supported by the record, but different from those relied upon by the trial court, its arguments may not be raised by a cross-appeal, as it is not an "aggrieved" party, but are more properly designated as cross-issues. Ariz. R. Civ.App. P. 1, 17B A.R.S.; *Kalil Bottling Co. v. Burroughs Corp.*, 127 Ariz. 278, 619 P.2d 1055 (App.1980). We consider the issues Globe raises within this context.

finding that Miami had standing to challenge the annexation.

## Facts and Procedural History

■ ¶ 2 In reviewing a grant of summary judgment, we review the facts in the light most favorable to the nonmoving party. *Martinez v. Woodmar IV Condominiums Homeowners Ass'n*, 189 Ariz. 206, 941 P.2d 218 (1997). So viewed, the facts show that in July 1996, the Globe City Council enacted Ordinance No. 677, annexing approximately ninety-three acres of land abutting Globe's western boundary and located east of Miami. Miami moved for summary judgment, claiming that the ordinance did not comply with the provisions of A.R.S. § 9–471(A)(1) because the parcel to be annexed was not contiguous, as that term is defined by subsection (H)(3), because its length was more than twice its width. Globe filed a cross-motion for summary judgment on the grounds that Miami lacked standing to challenge the annexation, that the parcel was contiguous, and that, even if the contiguity requirement was not strictly met, Globe had substantially complied with it. In granting Globe's motion for summary judgment, the trial court found that Miami had standing to challenge the annexation. The court also found that, although Globe had not strictly complied with the contiguity requirement, the statute only required substantial compliance and that Globe had substantially complied with it. On appeal, Miami challenges the trial court's conclusion that Globe was only required to substantially comply with the statute. In its cross-appeal, Globe contends the findings that Miami had standing to challenge the annexation and that Globe had failed to strictly comply with the statute are erroneous.

## Standard of Review

■ ¶ 3 Summary judgment is proper if "there is no genuine issue as to any material

fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c), 16 A.R.S. "When reviewing a grant of summary judgment on undisputed facts, our role is to determine whether the trial court correctly applied the substantive law to [the] facts." *St. Luke's Health Sys. v. State*, 180 Ariz. 373, 376, 884 P.2d 259, 262 (App. 1994).

## Standing

■ ¶ 4 Section 9–471 sets forth the procedures, restrictions and other matters related to annexation of property by a city or town. In pertinent part, § 9–471(C) provides: "Any city or town, the attorney general, the county attorney, or any other interested party may upon verified petition move to question the validity of the annexation for failure to comply with the provisions of this section." In ruling that Miami had standing to challenge the annexation, the trial court found that "the phrase 'any city or town' means just that, and that any other municipality in the State of Arizona could challenge the annexation."

¶ 5 Globe argues that a fair reading of the statute suggests that the term "interested" modifies not only the term "other interested party" but also the term "any city or town," and, thus, the statute permits only interested cities or towns to challenge another municipality's annexation of property. It points out that the trial court's interpretation of the statute would allow a city "over 200 miles away" and with no interest in the annexation of certain property to challenge it. Because the record indicates that Miami is located in close proximity to both Globe and the property it proposes to annex, and that Miami is an interested party with respect to the annexation, we need not determine whether the statute allows a city or town geographically remote from the property to be annexed and with no interest in it to challenge the annexation.[2]

**2.** We also find misplaced Globe's reliance on our decision in *City of Douglas v. City of Sierra Vista*, 21 Ariz.App. 71, 515 P.2d 896 (1973), for the proposition that Miami does not have standing to challenge the annexation. There, a number of municipalities including the City of Douglas brought an action pursuant to § 9–471(C) chal-

lenging the City of Sierra Vista's annexation of the Fort Huachuca Military Reservation on the ground that the annexation petition contained an inaccurate legal description of one of the parcels to be annexed. They also challenged the statute's constitutionality, claiming it abridged the right to petition in contravention of the First

¶ 6 The property to be annexed lies between Globe and Miami, terminating near Miami's eastern corporate limit. Given this geographical proximity, we presume Miami has a genuine interest in the proposed annexation by a neighboring municipality. *See City of Tucson v. Woods*, 191 Ariz. 523, 959 P.2d 394 (App.1997) (holding Tucson had standing to challenge incorporation of neighboring Tortolita because Tucson had direct stake in demanding proper enforcement of statute protecting municipalities from potential problems arising from existence of many separate governmental entities in a limited geographical area). The record supports this presumption, belying Globe's argument here and to the trial court that Miami has no such interest.

¶ 7 Miami points out it provides sewer system service to property owners within the area to be annexed. Further, the record contains a letter sent by counsel for Globe to counsel for Miami within the context of this litigation, wherein counsel attempts to assuage Miami's concerns about the proposed annexation and confirms the common concerns and interests of the two municipalities. Specifically, Globe assured Miami that it would do whatever was necessary to address Miami's concerns about "sewer issues" as well as water usage, economic development, and other issues that would "affect all of the Globe–Miami area." Noting that they share area resources, Globe assured Miami it would attempt to conserve these resources. It also stated that, because both communities would benefit from Globe's expansion, as it would attract more tourist trade, both should share the financial burdens associated with such growth. Globe acknowledged that the annexation would directly and significantly impact Miami; it cannot now argue that Miami has no interest in it.

■ ¶ 8 Having found that Miami is an interested party with respect to the annexation of the neighboring property and noting that standing is not a jurisdictional, but merely a prudential, requirement,[3] we conclude that Miami has standing pursuant to § 9–471(C) to challenge the annexation procedure. Accordingly, we affirm the trial court's ruling in this regard, albeit for a different reason.

### Compliance Standard

■ ¶ 9 We now address whether there must be strict or substantial compliance with the contiguity requirement of § 9–471, a question of first impression in this state. The statute provides in relevant part as follows:

A. The following procedures are required to extend and increase the corporate limits of a city or town by annexation:

1. A city or town shall file in the office of the county recorder ... a blank petition ... setting forth a description and an accurate map of all the exterior boundaries of the territory contiguous to the city or town proposed to be annexed....[4]

\* \* \*

H. Territory is not contiguous for the purposes of subsection A, paragraph 1 of this section unless:

\* \* \*

3. The distance from the existing boundary of the annexing city or town where it adjoins the annexed territory to the furthest point of the annexed territory

Amendment of the United States Constitution. We found Douglas lacked standing to challenge the constitutionality of § 9–471, but we did address Douglas's claim that Sierra Vista failed to comply with a provision of § 9–471 requiring that the petition contain an accurate legal description of the property to be annexed. That we addressed this claim without any further reference to standing suggests we assumed Douglas had standing to assert it.

3. The question of standing is not a constitutional jurisdictional requirement in Arizona as we have

no counterpart to the case or controversy requirement of the federal constitution. *Armory Park Neighborhood Ass'n v. Episcopal Community Servs.*, 148 Ariz. 1, 712 P.2d 914 (1985); *State v. B Bar Enterprises*, 133 Ariz. 99, 649 P.2d 978 (1982). "In addressing the question of standing, therefore, we are confronted only with questions of prudential or judicial restraint." *Armory Park*, 148 Ariz. at 6, 712 P.2d at 919.

4. Subsection A contains five additional requirements that are not relevant to this decision.

from such boundary is no more than twice the width of the annexed territory.[5]

(Emphasis added.)

¶ 10   Globe argues that the trial court correctly found it was only required to substantially comply with the conditions enumerated in § 9–471(A), including the contiguity requirement, citing the following cases as support: *Town of Scottsdale v. State ex rel. Pickrell,* 98 Ariz. 382, 405 P.2d 871 (1965); *State ex rel. Helm v. Town of Benson,* 95 Ariz. 107, 387 P.2d 807 (1963); *Moorehead v. Arnold,* 130 Ariz. 503, 637 P.2d 305 (App. 1981); *Glick v. Town of Gilbert,* 123 Ariz. 395, 599 P.2d 848 (App.1979). We disagree, concluding that the requirement of contiguity must be strictly met, a finding that is not inconsistent with the authority Globe cites.

¶ 11   In *Town of Scottsdale,* our supreme court held that Scottsdale did not have jurisdiction to annex the area in question because, as the petition for annexation contained two "conditional" signatures, it had not complied with the condition that the petition be signed by the owners of one-half or more of the total assessed value of all the property to be annexed.[6] First, the court characterized as an "indispensable condition precedent" the requirement that the petition must be signed by at least one-half of the eligible property owners. 98 Ariz. at 385, 405 P.2d at 873. It then stated that § 9–471 "does not require absolute and literal compliance for annexation, but substantial compliance is necessary to effectuate the purpose of the statute." 98 Ariz. at 384–85, 405 P.2d at 872–73. Nevertheless, noting that the "statute [did] not provide for a conditional petition being presented to the governing body of the city or town," 98 Ariz. at 385, 405 P.2d at 873, the court found that the two signers, by imposing

conditions on the validity of their signatures, rendered the petitions invalid because, without these signatures, the petition was not signed by the requisite number of eligible property owners. It is unclear whether the court found this situation failed to substantially or strictly meet the statutory requirement. In either case, the failure to comply was fatal and provides no support for Globe.[7]

¶ 12   We note further that, in *Benson,* the court stated: "Absolute and literal compliance with [former § 9–471] would result in defeating the purpose of the statute in situations where no one has been or could be misled." 95 Ariz. at 108, 387 P.2d at 808. This statement, however, was in the context of the holding that a sufficient "presentation" of the petition, as required by the former statute, was accomplished when the city council's agent informed the council by telephone that the petition had been signed by the requisite number of property owners rather than physically presenting the petition to the council. The court noted that the statute did not expressly require that the petition be physically delivered to the council before it could lawfully adopt the annexation ordinance. *See also Glick,* 123 Ariz. at 398, 599 P.2d at 851 (although there was a typographical error in the legal description of property to be annexed, map attached to annexation ordinance was accurate; therefore, "minor and not misleading discrepancies between the legal description and the map [were] not fatal to the validity of the annexation").

¶ 13   It is not a technical error of which Miami complains here, nor does it argue that anyone was or could have been misled by the annexation process; rather, it argues that Globe was without jurisdiction to

---

5.  The current provision is identical except that it provides that the territory's length cannot be more than twice the "maximum" width of the annexed territory. 1997 Ariz. Sess. Laws, ch. 204, § 1.

6.  *Town of Scottsdale* interpreted A.R.S. § 9–471(A), currently A.R.S. § 9–471(A)(4), which provides that the petition for annexation contain the signatures of "the owners of one-half or more in value of the real and personal property and more than one-half of the persons owning real and personal property that would be subject to

taxation by the city or town in the event of annexation."

7.  We note that, although in *Moorehead* we cited *Town of Scottsdale* for the proposition that the validity of an annexation ordinance depends upon presentment of annexation petitions substantially in compliance with § 9–471, we only did so to support dicta which was ancillary to our decision. Therefore, *Moorehead,* as *Town of Scottsdale,* provides no support for Globe's position.

annex the parcel because it was not contiguous, as expressly required by the statute. We agree with Miami that strict compliance with this statutory condition was required to permit the parcel to be lawfully annexed by Globe.[8] The statute provides that the parcel to be annexed may not be more than twice as long as it is wide. Similar to the requirement in *Town of Scottsdale* that the petition for annexation must be signed by at least one-half of the eligible property owners, this condition is either met or it is not. If not, the municipality does not have jurisdiction to annex the property in question. *Id.*

¶ 14  Conversely, there is little utility in applying a standard where an express statutory condition, such as contiguity, must be "substantially" met. It would be curious indeed to find, as Globe suggests we do, that a municipality substantially, and thus sufficiently, complied with the requirement of the statute that a parcel of property cannot be more than twice as long as it is wide if it is shown that the parcel's length is, in fact, more than twice its width. Were such an incongruous result acceptable, the question would still remain as to how much longer than wide the parcel could be before it no longer "substantially" complied. We believe the legislature intended neither such uncertainty nor such discretion on the part of either municipalities or the judiciary when it included this express and indispensable condition in the statute. *See Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 592, 892 P.2d 1375, 1381 (App.1994) (in construing a statute, we may "consider [its] context . . . and its historical background, subject matter, effects, consequences and purpose"). Further, strict compliance is no hardship for the annexing municipality because it absolutely controls the determination in the first instance of the

dimensions of the parcel to be annexed. It has no one to blame but itself if the dimensions do not strictly comply with the statute's directives. Accordingly, the trial court erred in finding that Globe was only required to substantially comply with the contiguity requirement of § 9–471(H)(3).

## Contiguity Requirement

■ ¶ 15  The parcel to be annexed is irregularly shaped: widest near its irregular common boundary with Globe's western corporate limit, with the longer dimension extending from that boundary to the west. The parcel's length, for contiguity purposes, is the distance from Globe's "existing boundary" where it adjoins the parcel to be annexed "to the furthest point of the annexed territory from such boundary."[9] § 9–471(H)(3). The parties disagree as to the parcel's length but agree as to its width.

¶ 16  Miami measured the parcel's length by drawing and measuring a line from a point it chose on the common boundary directly to the point on the parcel's perimeter furthest from the original point. The trial court found that this length exceeded twice the parcel's agreed width. Globe does not argue, nor does it appear, that this determination was in error. The record does not show whether the parcel's length, as determined by Miami, was the maximum possible. However, this determination is unnecessary for our decision; because the parcel's length as Miami measured it was more than twice its width, it exceeded the maximum length allowed by the statute.

¶ 17  Globe did not measure the parcel's length from the point it chose on the common boundary to the point on the parcel's perimeter furthest from that point. Rather, its

8.  Globe contends that Miami did not argue below that strict compliance with the contiguity requirement was necessary and, therefore, waived that argument. We disagree. Miami did not specifically argue that strict compliance was necessary, noting that our courts have applied a substantial compliance standard to other requirements contained in § 9–471. Nevertheless, it argued that if the parcel's length exceeded twice the width, the contiguity requirement is not met, the same argument it raises here. Moreover, the trial court apparently construed Miami's argument as urging a strict compliance standard be-

cause it specifically found that strict compliance with the contiguity requirement was not required. Accordingly, we find Miami did preserve this argument for appeal.

9.  We note that subsection (H)(3) does not mandate from which point or points on the common boundary the measurement must or may be made. Because neither party complains that the other chose an improper point on the boundary from which to measure the parcel's length, we do not address this issue.

measurement of length terminated at a point outside the parcel and to the north of what appears to be the furthest point from the common boundary. Using this method, Globe determined that the parcel's length was not longer than twice its width. Globe does not contend that the statute specifically allows or requires such a technique, arguing simply that its method conformed "to generally accepted land surveying and engineering principles." Because the statute clearly provides us directions in this regard, we are not guided by general land surveying principles. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) ("If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation.").

¶ 18 We find the statutory language, which commands that the parcel's length be the distance from the common boundary "to the furthest point" of the parcel from the boundary, clearly evinces the legislature's intent that its measurement must be from the boundary to the point farthest from it on the parcel's perimeter, not to some other point. Thus, we find that the method Globe used to determine the parcel's length/width ratio did not conform with the method required by § 9–471(H)(3). The results it thereby achieved were, therefore, invalid. We find the trial court's approval of Miami's measurement was correct as consistent with § 9–471(H)(3) and conclude, therefore, that when strict compliance with the statute is required, the parcel to be annexed was not contiguous.

¶ 19 Having found that Globe did not strictly comply with the requirement of the statute that the parcel to be annexed must be contiguous, the trial court was compelled to find that Globe was without jurisdiction to annex the parcel. *See Town of Scottsdale.* The judgment of the lower court is reversed.

CONCURRING: JOSEPH W. HOWARD, Judge, and PHILIP G. ESPINOSA, Judge.