IN THE COURT OF APPEALS
STATE OF ARIZONA



FILED BY CLERK

MAR 15 2006

COURT OF APPEALS
DIVISION TWO

CORNMAN TWEEDY 560, LLC, a          )
Delaware limited liability company;  )
SUN LAKES-CASA GRANDE               )
DEVELOPMENT, LLC, a Delaware        )
limited liability company,           )
                                     )
        Plaintiffs/Appellants,  )
                                     )
          v.    )      2 CA-CV 2005-0159
                                     )      DEPARTMENT B
CITY OF CASA GRANDE, a municipal     )
corporation and real party in interest, )   O P I N I O N
                                     )
        Defendant/Appellee.     )
_____)
                                     )
CITY OF CASA GRANDE, a municipal     )
corporation,                         )
                                     )
        Plaintiff/Appellee,     )
                                     )
          v.    )
                                     )
CITY OF ELOY, a municipal            )
corporation,                         )
                                     )
        Defendant/Appellant.    )
_____)

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause Nos. CV200501010 and CV200501106 (Consolidated)

Honorable Boyd T. Johnson, Judge

AFFIRMED IN PART AND REVERSED IN PART

Fennemore Craig
  By Andrew M. Federhar, Timothy Berg,
    and Theresa Dwyer

Phoenix
Attorneys for Plaintiffs/Appellants
and Defendant/Appellant


Moyes Storey, Ltd.
  By C. Brad Woodford and Andrew B. Ching

Phoenix
Attorneys for Defendant/Appellee

Brett D. Wallace, Casa Grande City Attorney

Casa Grande
Attorney for Plaintiff/Appellee

E C K E R S T R O M, Presiding Judge.

**¶1** The parties in this case dispute whether the City of Casa Grande's petition to annex certain lands east of the city's boundary complies with the dimension and state approval requirements of Arizona's annexation statute, A.R.S. § 9-471. We also consider whether one of the City of Eloy's annexation petitions, which encompasses some of the same territory, was filed in accordance with that statute.

### Facts and Procedural Background

**¶2** Because this is an appeal from a declaratory judgment, we view the evidence in the light most favorable to sustaining the judgment. *See Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, ¶ 5, 98 P.3d 572, 578 (App. 2004). Casa Grande filed a petition in June 2005 in the Pinal County Recorder's Office to annex nearly

seventeen thousand acres of land bordering the city to the east.[1]  Attached to the petition was the 1997 approval from the Arizona State Selection Board for annexation of some of the same state trust lands included in the annexation petition.

¶3        Plaintiffs/appellants Cornman Tweedy 560, LLC, and Sun Lakes-Casa Grande Development, LLC (collectively, Cornman), thereafter filed a special action complaint in superior court seeking declaratory relief.  They charged that Casa Grande's petition is invalid because one of the dimensions of the proposed annexation territory does not comply with the "length" and width restrictions in § 9-471(H)(3).  Cornman also alleged that Casa Grande has failed to secure current approval from the state for the annexation of the trust lands, rendering the petition void *ab initio*.

¶4        On the same day Cornman filed its complaint, Eloy filed in the recorder's office three petitions to annex territory.  One of those petitions sought to annex some of the same territory included in the Casa Grande petition.  Eloy maintains it filed that petition to deny Casa Grande an opportunity to cure any deficiencies in its annexation petition.

¶5        Casa Grande countered by filing its own special action complaint asking the trial court to invalidate Eloy's petition, characterizing it as "patently invalid."  Casa Grande also alleged that the relevant portion of § 9-471(A)(6) had required Eloy to attach to its petition an affidavit stating that the proposed annexation territory is not "already subject to

---

[1]See map attached as Appendix A.

3

an earlier filing for annexation," but that the affidavit Eloy had filed, stating that the property is not subject to a "valid earlier filing for annexation," is insufficient.

¶6        The two actions were consolidated.  The trial court conducted a hearing on the matters and considered three issues:  (1) whether the Casa Grande annexation petition exceeds the size restrictions in § 9-471(H)(3); (2) whether Casa Grande has valid approval from the state to conduct the annexation; and (3) whether Eloy's annexation petition is illegal because it includes land in the territory described in Casa Grande's petition.  The court resolved all issues in favor of Casa Grande, and Cornman and Eloy appealed.

**Discussion**

**A.  Does the shape of the annexation territory violate the contiguity requirement of § 9-471?**

¶7        Cornman first argues the trial court misinterpreted § 9-471 and, as a result, confused the "length" and width calculations of the territory in Casa Grande's petition.  It contends that the trial court's assignment of the shorter of the two dimensions as the length rather than the width is error and that the statute specifically contemplates that the length of a proposed annexation territory is necessarily the greater of the two dimensions.  We disagree and, after considering both the language and purpose of § 9-471(H)(3), find that the trial court correctly determined that the dimensions of the territory comport with the statutory requirements.

4

**¶8** We review issues of statutory construction *de novo*.[2] *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). The primary goal of statutory construction is to give effect to the intent of the legislature. *Id*. The best and most reliable indicium of that intent is the plain language of the statute. *Id*. If the language is ambiguous, we then consider "factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Id.*

**¶9** Arizona law requires that the territory of a proposed annexation be contiguous to the annexing city or municipality. § 9-471(A)(1); *see City of Safford v. Town of Thatcher*, 17 Ariz. App. 25, 28, 495 P.2d 150, 153 (1972). Strict compliance with the contiguity provision of § 9-471 is required. *Town of Miami v. City of Globe*, 195 Ariz. 176, ¶¶ 9-14, 985 P.2d 1035, 1038-40 (App. 1998).[3]

**¶10** Territory is contiguous for purposes of the annexation statute if the following criteria are met:

---

[2]Casa Grande argues we should review this matter solely for an abuse of discretion. It contends the trial court's "decision did not hinge on pure issues of law, but rather[,] upon applying the facts as it found them to the pertinent law." But, even if the only question before the court was the application of a statute, our review is still *de novo*. *See Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App. 1995).

[3]Casa Grande argues that its proposed territory need only substantially comply with the contiguity requirements of A.R.S. § 9-471(H)(3). *See Town of Scottsdale v. Pickrell*, 98 Ariz. 382, 384-85, 405 P.2d 871, 872-73 (1965) (requiring only substantial compliance with petition provision of § 9-471). We addressed and settled the issue in *Town of Miami v. City of Globe*, 195 Ariz. 176, ¶ 14, 985 P.2d 1035, 1040 (App. 1998) ("[T]he trial court erred in finding that Globe was only required to substantially comply with the contiguity requirement of § 9-471(H)(3).").

5

> 1.  It adjoins the exterior boundary of the annexing city or town for at least three hundred feet.
>
> 2.  It is, at all points, at least two hundred feet in width, excluding rights-of-way and roadways.
>
> 3. The distance from the existing boundary of the annexing city or town where it adjoins the annexed territory to the furthest point of the annexed territory from such boundary is no more than twice the maximum width of the annexed territory.

§ 9-471(H). Cornman does not dispute that Casa Grande's proposed annexation territory satisfies the requirements of § 9-471(H)(1) and (H)(2). But it contends that the court misapplied (H)(3) and that the "length" of the territory is more than double its maximum width.

¶11        Section 9-471(H)(3) requires that the width of annexation territory be compared to the distance between the adjoining boundaries and "the furthest point of the annexed territory from such boundary." The trial court found that the farthest point of the territory from any of the shared boundary is the corner of Storey Road and Tweedy Road and that the distance from the shared boundary is 5.5 miles.[4] The court then found the

---

[4]We do not necessarily agree that this intersection is the point farthest from the boundary shared by Casa Grande and the annexation territory. That point is visibly less than 5.5 miles from the shared boundary at the intersection of SR287 and Toltec Buttes Road. The record before us does not permit a precise measurement, but it seems likely that the farthest point of the annexation territory from the shared boundary is the northeasternmost point of the territory along Val Vista Road. But, because that distance does not appear to exceed 5.5 miles, a recalculation based on that point would not change the outcome of the case. Moreover, although the parties dispute which of the two measurements required by § 9-471(H)(3) the 5.5-mile distance should represent, neither challenges the trial court's

6

maximum width of the territory is 11.5 miles. Because the distance from the farthest point of the territory to the city boundary, 5.5 miles, is not more than double the width, 11.5 miles, the court concluded that the proposed annexation does not violate the contiguity requirements in subsection (H)(3).

¶12        Cornman maintains that the length of a territory must necessarily be the longer of the measurements and the width the shorter. It argues that, "[a]lthough A.R.S. § 9-471 does not explain the term 'width,' it does define 'length' as being 'the distance from the existing boundary . . . to the furthest point of the annexed territory from such boundary.'" But Cornman overlooks that the statute does not contain the word "length" at all and requires that the width be measured only after the farthest boundary of the territory is determined.

¶13        Cornman also maintains that, even if the length need not be longer than the width, the trial court erroneously determined the farthest point of the annexation territory from the shared boundary because it chose an incorrect shared boundary point from which to measure. The trial court determined the farthest point of the territory by identifying the boundary point of the territory that is the greatest distance from the *nearest* shared boundary point. Cornman contends the court should have determined the farthest point by identifying a point along the boundary of the territory that is the greatest distance from the *farthest* shared boundary point.

calculation of that distance.

7

¶14 Subsection (H)(3) does not specifically articulate which point along the shared boundary must be used for measuring. Thus, Cornman's interpretation of the statute arises from one plausible facial reading of its language. But that interpretation would require courts to ignore closer points along a shared boundary when determining the farthest point of an annexation territory from that boundary. The boundary of the annexation territory Cornman has selected as farthest from Casa Grande (a point along the northernmost border of the annexation territory on Millrise Road) is obviously closer than 5.5 miles to the shared boundary of Casa Grande to the southwest. Thus, although the Millrise point may indeed be 11.9 miles to the north of the southernmost part of Casa Grande's shared boundary with the annexation territory, the Millrise point is clearly not "the furthest point of the annexed territory" from the "existing boundary" of Casa Grande. § 9-471(H)(3). In short, Cornman's interpretation of the statute, when applied to the annexation here, does not ultimately comport with the language of § 9-471(H)(3).

¶15 Moreover, Cornman's interpretation of subsection (H)(3) would impede those annexation plans involving none of the abuses the legislature sought to remedy in adopting the statute. Section 9-471(H) was designed to prevent "gerrymandered" annexation plans that result in "islands" of unincorporated territory isolated from competing annexation by intervening thin strips of incorporated areas. *Roberts v. City of Mesa*, 158 Ariz. 42, 46, 760 P.2d 1091, 1095 (App. 1988); *see* 56 Am. Jur. 2d *Municipal Corporations, Counties, and Other Political Subdivisions* § 53 (2000); *In re Annexation of Property*, 642 N.E.2d 502,

8

507 (Ill. App. Ct. 1994) (contiguity requirements facilitate "natural and gradual extension of municipal boundaries to areas which adjoin one another in a reasonably substantial physical sense"); *City of Rapid City v. Anderson*, 612 N.W.2d 289, 293 (S.D. 2000) (striking plan to annex area of distant land by way of 4.7-mile-long, 200-foot-wide corridor).

¶16 Cornman's interpretation, in contrast, would require courts to find proposed annexations insufficiently contiguous even when the longest boundary of a proposed annexation territory might be shared with the annexing municipality. For example, had Casa Grande simply opted to extend its boundary one mile to the east by annexing a strip of contiguous land along the entire twelve or so miles of that boundary, its plan would not be legal under Cornman's interpretation because the "length" would exceed the maximum width. We do not believe the legislature intended to thwart proposals to annex land obviously contiguous to an annexing municipality and a logical target for annexation. In fact, the proposed annexation territory here, although irregularly shaped, is geographically contiguous with Casa Grande along the bulk of the territory's western boundary—a boundary considerably longer than either its northern or southern boundary.

¶17 Cornman argues that our decision in *Town of Miami* supports its interpretation of subsection (H)(3). But, in that case, we merely held that, even when dealing with an irregularly shaped annexation territory, a court must measure to the farthest point of the territory boundary—not some other point determined by common surveying and engineering principles. *Town of Miami*, 195 Ariz. 176, ¶¶ 17-18, 985 P.2d at 1040-41. And we

9

specifically declined to determine the precise point along the shared boundary for measuring the farthest point of the annexation territory from that boundary. *Id*. n.9. Therefore, nothing in *Town of Miami* requires us to read § 9-471 differently. We affirm the trial court's ruling that the dimensions of the proposed annexation territory do not offend § 9-471(H)(3).

## B. Does Casa Grande have valid state approval?

¶18 Cornman argues that Casa Grande has not secured valid approval from the state to include certain state trust lands within its proposed annexation territory as required by § 9-471(A)(1). Cornman does not challenge the validity of the form Casa Grande used to secure the state's approval or the signatures of the relevant state officials on the form. Rather, it contends that the approval, acquired in the context of an earlier annexation, has expired and that, in any event, it does not authorize Casa Grande to annex the state land under the current petition.[5]

¶19 Casa Grande originally secured the state approval as part of its 1997 annexation plan. Ultimately, however, not all of the state-owned territory covered by that approval was annexed by the 1997 plan. Cornman contends that, in the eight years since

---

[5]At oral argument, Casa Grande suggested that Cornman lacked standing to complain about the sufficiency of state approval and emphasized that the state had not appeared in the case. Casa Grande did not raise this argument in its brief. Even if we were inclined to address a contention raised for the first time during oral argument, we find that it has no merit. Section 9-471(C) grants "any . . . interested party" authority to challenge an annexation petition "for failure to comply with the provisions of this section." One of those provisions is the requirement of written state approval of the proposed annexation if it includes state land. *See* § 9-471(A)(1).

the state approval was granted, its validity has lapsed and the approval has no residual legal effect. Casa Grande maintains, however, that, because the state-owned land included in the current annexation petition was also included in the earlier annexation plan, it did not need to again procure state approval. Casa Grande asserts that, because "the State has never voided, vacated or rescinded that approval," it remains effective.

¶20        The trial court agreed with Casa Grande. After concluding that Cornman had the burden of proving that the approval has been rendered void by the passage of time, the court found Cornman had failed to carry that burden. The court ruled that "the change in the composition of the State Selection Board in the intervening years since the issuance of the approval cannot be presumed as a matter of law to have voided, vacated or rescinded that approval" and that, "for the purpose of the pending Casa Grande East Annexation petition, that approval remains valid."

¶21        Whether Casa Grande's approval from the state is legally sufficient to meet the provisions of § 9-471(A)(1) is a question that requires statutory construction. Accordingly, we review that question *de novo*. *See Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). If a municipality seeks to annex territory that includes state trust land, it must file with its petition for annexation "written approval of the state land commissioner and the selection board established by [A.R.S.] § 37-202." § 9-471(A)(1). Section 37-202(A) creates a selection board composed of the governor, the state treasurer, and the

11

attorney general. The board is charged by statute with the responsibility of approving or rejecting the inclusion of state lands in a proposed annexation. § 37-202(G).

¶22 At the hearing before the trial court, Casa Grande conceded that, although it had acquired approval from the selection board to annex state lands in 1997, it had only acted on a portion of those lands, the remainder of which are included in the current petition. The city explained its position as follows:

> [Attorney for Casa Grande]: . . . [W]hen Casa Grande went to the State Land Department back in 1997 and asked for permission, we asked for permission for a good number of state lands . . . .
>
> . . . .
>
> . . . And some of those [lands] weren't intended at that time to be annexed by the City of Casa Grande.
>
> Part of the reason that you do that—it's par for the course with what cities do and the way you treat the State Land Department is you go to them, judge, and you say we'd like to annex this land . . . . We don't know how quickly we can accomplish it . . . , but we want to annex this land . . . .
>
> The State Land Department, which meets only one time a year, entertains those petitions, and [it] doesn't condition that on the annexation taking place within a certain amount of time. It is not a signature . . . [that] has a certain time frame on it.

When the trial court questioned whether Casa Grande had presented the 1997 annexation petition to the state as a present or a future proposal, its attorney answered: "Your honor, to be honest, I don't know exactly how it was presented. So I don't want to misrepresent

12

that as has been described to me. My understanding is that we went to the State and said eventually, we want to get all of this land."

¶23 In essence, Casa Grande maintains that, when the state granted it permission in 1997 to annex certain state territory pursuant to a specific annexation proposal, the state granted it leave to annex that land at any time in the future in any annexation proposal. We do not consider that a reasonable interpretation of the relevant statutes in light of their specific language and practical effect.

¶24 Section 37-202(G) reads in pertinent part: "If state land is included in a proposed corporate limit of a municipality, the selection board . . . may render a determination approving or rejecting the inclusion of the state land in *the* proposed corporate limit." (Emphasis added.) By employing the word "the" rather than "a" or "any," the legislature contemplated that any board approval is for the specific annexation proposal presented to it by a municipality. *See Zamora*, 185 Ariz. at 275, 915 P.2d at 1230 (plain language is clearest evidence of legislative intent). And we can find no language in the statute suggesting that the board's approval of the annexation of state lands under one proposal necessarily implies approval to annex those same lands under any other conceivable proposal of the same municipality. Nor has Casa Grande provided any authority for its contention, which the trial court apparently accepted, that a presumption of validity attached to its assertion of state approval for the current annexation petition when it is undisputed that the state had approved a different annexation proposal.

¶25　　　　Although nothing in the record indicates the precise criteria the board and the state land commissioner use when considering whether to approve the inclusion of state lands in an annexation proposal, those officials have an implicit duty to protect the value of state lands and to maximize the rate of return on those lands. *See* Ariz. Const. art. X, §§ 1-2 (Arizona State Land Department holds state lands in trust); *Forest Guardians v. Wells*, 201 Ariz. 255, ¶ 13, 34 P.3d 364, 369 (2001) (state land commissioner subject to same fiduciary obligations as any private trustee and has duty to "preserve [state] trust property and make it productive"). Consistent with this duty, the state's determination whether to approve annexation of certain state lands could pivot on any feature of an annexation proposal that affects the current or future value of those lands. Thus, we cannot assume as a matter of law that the state board and the land commissioner would necessarily approve the annexation of certain state lands by a particular municipality simply because they had done so in the past when faced with a different proposal. In this light, Casa Grande's argument, and the trial court's conclusion—that the state's approval of the 1997 proposal constituted approval of the current proposal—would deny the selection board and the state land commissioner their statutory prerogative to evaluate the effect the current proposal might have on the state lands in question.

¶26　　　　Accordingly, we hold that state approval of one annexation plan cannot replace the need for securing separate state approval of a different annexation plan even when the same municipality seeks annexation of the same state lands under both plans. We

therefore necessarily reject Casa Grande's contention that the state approval it secured of its 1997 plan constituted implicit state approval of the current plan.[6]

**C. Was Eloy's annexation plan filed in accordance with § 9-471?**

¶27    Finally, Cornman argues that, because Casa Grande's petition did not comply with the statutory requirements, it is void *ab initio*, and therefore, Eloy's petition to annex some of the same lands is valid. Casa Grande contends, however, that Eloy's petition was filed in violation of state law, specifically, § 9-471(A)(6). Because the issue requires statutory construction, our review is *de novo. See Zamora*, 185 Ariz. at 275, 915 P.2d at 1230. We conclude that Eloy's petition was filed in violation of the statute regardless of whether the defect in Casa Grande's petition renders it void *ab initio*.

¶28    Section 9-471(A)(6) requires a municipality filing an annexation petition to include "a sworn affidavit verifying that no part of the territory . . . is already subject to an earlier filing for annexation. The county recorder shall not accept a filing for annexation without the sworn affidavit." Eloy's petition included a sworn affidavit by its city manager in which he stated: "I hearby affirm, pursuant to A.R.S. § 9-471(A)(6), that no part of the territory for which the attached Annexation Petition is made is already subject to a valid earlier filing for annexation."

---

[6]Given our resolution of this issue, we need not address whether state approval, when properly secured for the annexation in question, may lapse.

15

¶29    That affidavit did not comply with the statute. The qualifying language in the affidavit—no "*valid* earlier filing"—is not part of the statute. Although the legislature clearly contemplated that some annexation petitions might be challenged and provided a specific procedure for doing so, *see* § 9-471(C), the statute contains no provision for filing a contingent petition to secure priority in the event a prior petition is successfully challenged through that process. And nothing in § 9-471(A)(6) grants cities or towns the authority to unilaterally assess the validity of another municipality's petition and disregard the prohibition on a subsequent petition if, in their opinion, the prior petition is defective. If that were in fact the rule, nothing would prevent multiple cities from filing competing petitions, all of which challenge the validity of the preceding petitions. Such a scheme would frustrate the clear intent of the law to allow the *filing* of only one petition for a specific territory at a time.

¶30    Eloy contends that our interpretation of the statute would allow a municipality to secure priority for annexation by filing a patently defective petition and that the legislature could not have contemplated such a result. But the legislature provided a clear remedy for interested parties, including competing municipalities, to expeditiously challenge a defective petition. *See* § 9-471(C). We also reject Eloy's suggestion that the legislature failed to contemplate whether a competing municipality could file a contingent petition. As we have observed, when the legislature promulgated § 9-471(A)(6)—a provision expressly

16

prohibiting the filing of any petition to annex territory once that territory is subject to an "earlier filing for annexation"—it implicitly rejected a contingent filing scheme.

**¶31** Accordingly, we conclude that Eloy was not entitled to file a competing petition to annex a portion of the territory included in Casa Grande's petition because, at the time it did so, Casa Grande's petition constituted an "earlier filing for annexation" under the statute. § 9-471(A)(6). And Eloy's petition was defective because it did not contain, as § 9-471(A)(6) specifically requires, an avowal that there were no earlier petitions involving the territory it sought to annex in its own petition. Because we find Casa Grande's petition also failed to comply with the statutory requirements for a valid annexation petition, we conclude that neither Casa Grande nor Eloy has filed a petition giving either authority to annex the overlapping territory in question. *See Town of Miami*, 195 Ariz. 176, ¶ 19, 986 P.2d at 1082.

**¶32** Cornman has requested attorney fees and costs on appeal pursuant to § 9-471(P). That provision entitles property owners who prevail in any action challenging the annexation of their property to receive from the annexing municipality "reasonable attorney fees and costs relating to the action." Cornman has prevailed in challenging the annexation of its property. Accordingly, we grant its request for those reasonable attorney fees and costs related to its successful challenge of Casa Grande's annexation of its property upon its compliance with Rule 21, Ariz. R. Civ. App. P., 17B A.R.S.

**¶33** Affirmed in part and reversed in part.

17

_____

PETER J. ECKERSTROM, Presiding Judge


CONCURRING:


_____

PHILIP G. ESPINOSA, Judge


B R A M M E R, Judge, specially concurring.

¶34      I concur in the result, and in parts B and C of the court's decision, but cannot wholeheartedly endorse the entirety of part A. I agree that § 9-471(H) is, at best, ambiguous and confusing, and at worst, impossible to decipher. I conclude that the legislature, when enacting this statute, failed to contemplate, and therefore did not address, a host of variables, including the factual scenario of this case. In fairness, I doubt that any legislation could anticipate the wide variation in facts that can be imagined, including those presented here. Nonetheless, I have trouble concluding, as does the majority, that the legislature intended the result the trial court reached. And, although this issue may arise again, we need not reach or decide it to resolve this case. Accordingly, I would rest the decision on the City of Casa Grande's failure to obtain State approval of this particular annexation, leaving for another, and more appropriate, day the analysis of this perplexing statute.

18

_____
J. WILLIAM BRAMMER, JR., Judge