NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RENE DETRUIT, *Plaintiff/Appellant*,

*v.*

CASTLE ROCK HOMES LLC, *Defendant/Appellee*.

No. 1 CA-CV 18-0514
FILED 7-16-2019

Appeal from the Superior Court in Maricopa County
No. CV 2017-010438
The Honorable Hugh E. Hegyi, Judge, *Retired*

**AFFIRMED**

COUNSEL

Ivan & Associates, Glendale
By Florin V. Ivan
*Counsel for Plaintiff/Appellant*

Tiffany & Bosco PA, Phoenix
By Richard C. Gramlich
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1 Rene Detruit appeals the dismissal of his civil complaint against Castle Rock Homes, LLC for lack of standing and judicial estoppel. A person has standing to sue in Arizona when he possesses an interest in the outcome of the litigation. Because Detruit failed to disclose this cause of action to the bankruptcy court when seeking Chapter 7 discharge, the claim belongs to the bankruptcy trustee. We accordingly affirm that Detruit lacks standing because he has no interest in the outcome of this suit.

## BACKGROUND

¶2 In November 2012, Detruit entered into a contract with Castle Rock to build his home. After construction was nearing completion, Castle Rock received a demand letter from an attorney Detruit had retained to pursue a breach of contract claim. The attorney listed several incomplete or defective items related to construction covered under the contract. Specifically, the attorney alleged Castle Rock failed to build garages according to specifications in the contract and asserted that additional work needed to be completed to re-stucco the south pool wall and finish the exterior house painting. The letter also included a list of items Detruit asserted Castle Rock had failed to complete or correct:

> 1. Foyer ceiling repair and paint, water damaged;
>
> 2. West entrance door hung incorrectly, hard to open, gasket torn gap at the top;
>
> 3. Finish kitchen to garage door trim and paint, damaged by water leak;
>
> 4. Garage east wall yellowing, water damaged, needs painting;
>
> 5. Finish kitchen cabinet drawers and trim;

6. The second entrance door missing trim plugs;

7. Master closet rod needs to be reinstalled, broken plastic end caps;

8. Master bath floor drain, replace broken screw;

9. Small garage ceiling crack was repaired, needs painting;

10. Big garage electrical outlet cover 220v;

11. The pavers need repair on deck;

12. Holes in stucco on deck from temp fence, patch and paint as needed.

¶3        The attorney laid out what he believed to be the facts—after Detruit paid Castle Rock in full, Castle Rock had abandoned the job and was now in breach of contract. The attorney concluded the letter by demanding that Castle Rock contact Detruit to complete construction, threatening suit and adding that if litigation were necessary, he would "seek to recover all attorney's fees . . . and Court and/or administrative law costs incurred."

¶4        Six months later, Detruit filed for Chapter 7 bankruptcy. In completing the Debtors' Schedules that he submitted to the bankruptcy court, Detruit marked "NONE" in response to "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights of setoff claims." Based on Detruit's submissions, the bankruptcy court granted a full discharge of his debts in March 2015.

¶5        About three months after the discharge, Detruit filed a complaint against Castle Rock with the Arizona Registrar of Contractors ("ROC"). He submitted an extensive list of complaints that included some new issues, but also repeated many allegations from the 2014 demand letter.

¶6        After investigation, the ROC issued a directive instructing Castle Rock to remedy the following workmanship issues: deficient stucco application that resulted in leaks throughout the house; mold present in walls; water damage to interior sheetrock, stucco, tile grout, and paint; mismatched stucco on an exterior wall; broken roof tiles and splattered paint on driveway, pavers, and pony wall; closet doors in bedroom had water damage and did not fit closet; roof damage from painters and paint

overspray. The ROC also determined that any other workmanship violations alleged by Detruit were unsubstantiated and did not require corrective action.

**¶7**        Four months after the ROC issued its directive, an inspector conducted a site visit and determined that there were incomplete repairs, so the ROC issued a citation against Castle Rock. In response, Castle Rock explained it was not in violation of Arizona law because Detruit would only allow them access to the jobsite on the condition that Castle Rock agreed to re-stucco the entire house. The ROC referred the issue to the Office of Administrative Hearings to be adjudicated by an Administrative Law Judge ("ALJ").

**¶8**        At that hearing, the ALJ determined that Castle Rock had contacted Detruit with a plan that included applying waterproof stucco over the house's existing stucco, but that Detruit insisted that the ROC's directive required Castle Rock to remove all stucco, install a vapor barrier, and re-stucco the house. The ALJ concluded that Detruit failed to provide reasonable access to the house and that Castle Rock was thus unable to comply with the ROC's directive. The ALJ recommended closing the claim without prejudice, allowing Detruit one final chance to give Castle Rock unconditional and unrestricted access to the property.

**¶9**        The ROC modified the ALJ's decision to close Detruit's ROC complaint with prejudice. The ROC added, however, that nothing in its decision precluded Detruit from collecting from the Residential Contractors' Recovery Fund should he obtain a civil judgment against Castle Rock.

**¶10**        Detruit filed a complaint in the superior court, initiating this lawsuit. He asserted that Castle Rock failed to perform under the parties' construction contract and that as a result, Castle Rock had been unjustly enriched at Detruit's expense. Castle Rock moved for summary judgment, arguing that because Detruit failed to list the action among his assets during the previous bankruptcy proceeding, only the bankruptcy trustee would have standing to pursue the claim. Castle Rock also argued that Detruit was judicially estopped from maintaining a claim of workmanship deficiencies in a civil suit because he had affirmatively represented to the bankruptcy court that he had no outstanding claims prior to discharge. After hearing oral argument, the court granted summary judgment to Castle Rock "for the reasons stated in the Motion, Reply, and by Defendants at argument."

**DISCUSSION**

¶11 The superior court must grant summary judgment if the moving party shows that there is no genuine dispute of material fact and if the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo, "view[ing] the facts and any inferences drawn from those facts in the light most favorable to the party against whom judgment was entered." *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007).

## I. Standing

¶12 Detruit argues that the court erred in granting summary judgment based on a lack of standing. We review de novo whether a party has standing to pursue a cause of action. *All. Marana v. Groseclose*, 191 Ariz. 287, 289 (App. 1997). "A party has standing to sue in Arizona if, under all circumstances, the party possesses an interest in the outcome of the litigation." *Id.* The question of standing in Arizona is not jurisdictional, but merely "requires consideration of prudential and judicial restraint to ensure that courts do not issue mere advisory opinions, that the case is not moot, and that the issues will be fully developed by true adversaries." *Id.; see also Town of Miami v. City of Globe*, 195 Ariz. 176, 179, ¶ 8 n.3 (App. 1998).

¶13 Castle Rock urges us to apply federal law to determine whether Detruit has standing to sue in this case. As an Arizona court, "we are not bound by federal jurisprudence on the matter of standing." *Bennett v. Napolitano*, 206 Ariz. 520, 525, ¶ 22 (2003); *see Citibank (Ariz.) v. Miller & Schroeder Fin., Inc.*, 168 Ariz. 178, 184 (App. 1990) ("This is an Arizona state court case and does not involve federal jurisdictional considerations."). Nevertheless, Arizona courts have found federal law instructive when determining whether a party has standing to sue. *Bennett*, 206 Ariz. at 525, ¶ 22; *Brush & Nib Studio, LC v. City of Phoenix*, 244 Ariz. 59, 68, ¶ 14 (App. 2018) (review granted Nov. 20, 2018). For that reason, we turn to federal bankruptcy law to determine whether Detruit retained his interest in this claim post-discharge. *See Stewart v. Underwood*, 146 Ariz. 145, 147 (App. 1985) ("The effect of a discharge in bankruptcy is determined by the bankruptcy [c]ode.").

¶14 When a debtor initiates a bankruptcy proceeding, all tangible and intangible assets of the debtor become part of the bankruptcy estate. *Mobility Sys. & Equip. Co. v. United States*, 51 Fed. Cl. 233, 236 (2001); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986); *see* 11 U.S.C. § 541. To that end, federal law imposes "an express, affirmative

duty to disclose all assets, *including contingent and unliquidated claims*." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (citation omitted). "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then . . . it must be disclosed." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (citation omitted).

¶15        Upon conclusion of the proceedings, property of the estate that is not administered in the case or abandoned to the debtor remains property of the estate. 11 U.S.C. § 554(d); *Mobility Sys. & Equip. Co.*, 51 Fed. Cl. at 236. The debtor's failure to list an interest on a bankruptcy schedule also leaves that interest with the bankruptcy estate, within the control of the bankruptcy trustee. *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004); *Mobility Sys. & Equip. Co.*, 51 Fed. Cl. at 236. This occurs regardless of whether a claim is transferrable or assignable under state law. *See Sierra Switchboard Co.*, 789 F.2d at 709. For any claims that belong to the bankruptcy estate, the bankruptcy estate trustee then has the exclusive authority to sue on behalf of the bankruptcy estate. *Estate of Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1175-76 (9th Cir. 2006); *DCFS USA, LLC v. Dist. of Columbia*, 820 F. Supp. 2d 1, 3-4 (D.D.C. 2011); *see* 11 U.S.C. § 323. Thus, only the trustee has standing to sue for a claim not disclosed to the bankruptcy court. *Mobility Sys. & Equip. Co.*, 51 Fed. Cl. at 236; *see also Cusano v. Klein*, 264 F.3d 936, 947-48 (9th Cir. 2001) (finding that the debtor lacked standing to pursue a claim for undisclosed pre-petition accrued royalties).

¶16        Arizona courts have recognized federal bankruptcy law and granted standing to parties whose assets were abandoned to them by the bankruptcy court or by function of law. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 585-86, ¶¶ 53-54 (App. 2015) (holding that a party had standing for a pre-petition claim of medical battery when the bankruptcy court denied the bankruptcy trustee's attempt to sell the claim); *Foltin v. Foltin*, No. 1 CA-CV 14-0496 FC, 2016 WL 1329582, at *2, ¶ 7 n.1 (Ariz. Ct. App. Apr. 5, 2016) (mem. decision) (explaining that a party had standing to sue for mortgage payments despite filing for bankruptcy because the property was abandoned to her under 11 U.S.C. § 554(C)). Consistent with this principle, a party who did not disclose a potential cause of action to the bankruptcy court does not have standing to sue, because all interest in the undisclosed claim belongs to the bankruptcy trustee.

¶17        Here, Detruit failed to disclose the possibility of any cause of action against Castle Rock on the Debtors' Schedules he submitted to the

bankruptcy court. The demand letter sent by Detruit's attorney listing workmanship deficiencies showed that Detruit had knowledge of his breach of contract claim approximately six months before bankruptcy proceedings began.[1] In that letter, through his attorney, Detruit threatened administrative and judicial action against Castle Rock, showing that he knew a claim existed.

¶18 Detruit argues there is a genuine dispute of material fact as to the accrual date of each injury alleged. He reasons that because the list of workmanship deficiencies in the demand letter differs from the list in his ROC complaint, each new problem constituted a separate claim. Even if all aspects of the claim against Castle Rock were not known to Detruit at the time of disclosure, the demand letter shows that he knew a claim existed, and accordingly, he was required to disclose the claim. *Hamilton*, 270 F.3d at 785 ("[The debtor's] knowledge that a cause of action . . . existed at the time he filed for bankruptcy and completed his bankruptcy schedules and disclosure statements is clearly evidenced by the letters that his lawyers wrote . . . , both of which contained threats of litigation."); *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) ("We recognize that *all* facts were not known . . . , but enough was known to require notification of the existence of the asset to the bankruptcy court.").

¶19 Because Detruit failed to disclose the claim against Castle Rock to the bankruptcy court, the cause of action remains within the bankruptcy estate. Accordingly, any damages awarded to Detruit in a civil suit belong to the trustee. He therefore has no interest in the claim and lacks standing.

¶20 Because we agree with the superior court that Detruit lacks standing, we need not address his argument that the superior court erred in granting summary judgment based on the doctrine of judicial estoppel. *See Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996) ("We will affirm if the trial court's disposition is correct for any reason.").

---

[1] Detruit objects to admission of the attorney letter based on hearsay, privileged settlement communication, and relevance. The letter is not hearsay or privileged settlement communication because it was not offered to prove the truth of the matter asserted or the validity or amount of a disputed claim, but to show that Detruit knew of the claim's existence. *See* Ariz. R. Evid. 408, 801(c)(2). Further, the letter is relevant because at issue was whether a cause of action existed before Detruit's bankruptcy proceedings.

## II.    Attorney Fees

**¶21**         Detruit challenges the superior court's award of attorney fees and costs "pursuant to the terms of [the construction contract] and/or [Arizona Revised Statutes ("A.R.S.")] § 12-341.01." We will enforce a contractual provision for attorney fees when it is clear and unambiguous, *Mining Inv. Grp., LLC v. Roberts*, 217 Ariz. 635, 639, 641, ¶¶ 16, 26 (App. 2008), and review de novo the applicability of A.R.S. § 12-341.01. *Zeagler v. Buckley*, 223 Ariz. 37, 38, ¶ 5 (App. 2009). We review the amount of attorney fees and costs for an abuse of discretion. *Id.*

**¶22**         The "Disputes" section of the construction contract details the following in full:

> Should any dispute arise relative to the performance of this contract that the parties cannot resolve, the dispute shall be referred to a single arbitrator acceptable to the builder and the buyer. If the builder and the buyer cannot agree upon an arbitrator, the dispute shall be referred to the American Arbitration Association for resolution. All attorney fees that shall be incurred in the resolution of disputes shall be the responsibility of the party not prevailing in the dispute.

We agree with Detruit that this provision does not apply. Read in context, the provision awards fees for disputes litigated at arbitration, not for disputes in the superior court.

**¶23**         We nevertheless affirm the superior court's award of attorney fees and costs under A.R.S. § 12-341.01(A), which permits the court to award fees and costs for "any contested action arising out of a contract." Detruit argues that because this suit turns on whether his bankruptcy affects his ability to recover from Castle Rock, it does not arise out of a contract. We disagree. Damages listed in the ROC complaint directly relate to work performed under the construction contract. Detruit's complaint plainly asserts that as a result of Castle Rock's failure to perform under the construction contract, it was unjustly enriched—which could not have occurred absent a breach of that contract. Thus, an award under A.R.S. § 12-341.01 was not in error. As to the amount of the award, the superior court properly considered an attorney affidavit and a detailed list of the work performed. Given the broad discretion the superior court holds to award fees, we detect no error. *See Zeagler*, 223 Ariz. at 40, ¶ 10.

## CONCLUSION

¶24 For the foregoing reasons, we affirm. Castle Rock asks us to award attorney fees and costs on appeal under A.R.S. § 12-341.01. In our discretion, we decline to award fees, but award costs upon compliance with ARCAP 21. *See* A.R.S. § 12-341.



AMY M. WOOD • Clerk of the Court
FILED: AA